IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAURA HOLMES,** | ) | |
| 1500 Ocean Drive, Unit 1105, | ) | |
| Miami, Florida 33139, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **PAUL JOST,** | ) | |
| 1500 Ocean Drive, Unit 1105, | ) | |
| Miami, Florida 33139 | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Federal Election Commission,** | ) | |
| 999 E Street, N.W. | ) | |
| Washington, D.C. 20436 | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT FOR DECLARATORY RELIEF

---

## I.    NATURE OF ACTION

1.    Plaintiffs Laura Holmes and Paul Jost challenge the bifurcated contribution

limits under the Federal Election Campaign Act ("FECA") and its amendments.

FECA distinguishes contributions given for primary elections from contributions

given for general elections, and provides independent caps on contributions per election type. 2 U.S.C. § 441a(a)(1)(A) ("no person shall make contributions…to any candidate and his authorized political committees *with respect to any election for Federal office….*") (emphasis supplied); *see also* 2 U.S.C. § 441a(a)(6) (separating primary and general elections for purposes of contribution limits).

2.      Plaintiffs' case arises under the First Amendment's protection of the freedom to associate. U.S. CONST. amend. I.

3.      Plaintiffs' case also arises under the Fifth Amendment's Due Process Clause, in the context of equal protection of the law. U.S. CONST. amend. V; *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), for the proposition that the Fifth Amendment's Due Process Clause applies to the federal government in the same way the Fourteenth Amendment's Equal Protection Clause applies to the states).

## II.    JURISDICTION AND VENUE

4.      This Court has jurisdiction because this action arises under the First and Fifth Amendments to the United States Constitution and a federal statute. 28 U.S.C. § 1331.

5.      Under, 2 U.S.C. § 437h, this court has jurisdiction under FECA and its amendments to make necessary findings of fact and then to certify the

constitutional issues in the case immediately to the United States Court of Appeals for the District of Columbia Circuit for *en banc* consideration.

6.     This Court has jurisdiction under the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202.

7.     Venue in this Court is proper under 28 U.S.C. §§ 1391(b)(2) and (e).

### III.   PARTIES

8.     Plaintiffs Laura Holmes and Paul Jost are married to one another. Plaintiff Laura Holmes sometimes uses the name "Laura Holmes-Jost" when contributing to candidates. Plaintiffs are residents of Florida and citizens of the United States. They reside at 1500 Ocean Drive, Unit 1105, Miami, Florida 33139. Each plaintiff wishes to associate with a candidate in the amount up to the overall candidate contribution limit allowed for primary and general elections combined. Each wishes to donate to the victor of a primary election in the full amount that has already been donated by many contributors to that victor's incumbent opponent, who was unopposed in the primary by a member of his own party and whose contributors have effectively given money solely for the general election.

9.     Defendant Federal Election Commission ("FEC") is the federal government agency charged with administering and enforcing FECA and its amendments. 2 U.S.C. § 437c(b)(1).

## IV.   FACTS

10.     FECA splits the candidate contribution limits "to any candidate and his authorized political committees with respect to *any election* for Federal office…" 2 U.S.C. § 441a(a)(1)(A) (emphasis added).

11.      "Election" is defined to include general, special, primary, or runoff contests. 2 U.S.C. § 431(1)(A); *see also* 11 C.F.R. § 100.2.

12.     The primary and general elections are considered separate elections for the purposes of individual candidate contribution limits. 2 U.S.C. § 441a(a)(6) ("the limitations on contributions to a candidate imposed by paragraphs (1) and (2) of this subsection shall apply separately with respect to each election…").

13.     Pursuant to §§ 441a(a)(1)(A) and 441a(a)(6), the FEC has promulgated rules for determining whether a contribution is considered to have been given for the primary or general election. *See* 11 C.F.R. § 110.1(b).

14.     A contributor may earmark which election his contribution is intended to benefit. 11 C.F.R. § 110.1(b)(2)(i). Otherwise, contributions are presumed to be for the "next election." 11 C.F.R. § 110.1(b)(2)(ii).

15.     Earmarked contributions made *after* the designated election may only be used to retire outstanding debts; all other such contributions must be returned. 11

C.F.R. § 110.1(b)(3)(i)(A). Detailed FEC rules define what obligations constitute outstanding debts in this context. 11 C.F.R. § 110.1(b)(3)(iii).

16.    Thus, even if a contributor has not reached the contribution limit with respect to a given candidate and his primary election, the debt of that candidate's committee delineates the extent to which the contributor may associate with the candidate *after* the primary election.

17.    Alternatively, the candidate's committee may seek to have the contribution redesignated to the next election (i.e., the general election). 11 C.F.R. § 110.1 § 110.1(b)(3)(i)(B); *see also* 11 C.F.R. § 110.1(b)(5) (detailing redesignation process).

18.    Plaintiffs Laura Holmes and Paul Jost wish to contribute to individual candidates after their primaries. They wish to do so up to the full amount allowed under FECA and its amendments without regard to the artificial distinction between primary and general elections found in 2 U.S.C §§ 441a(a)(1)(A) and 441a(a)(6).

19.    Plaintiff Laura Holmes supports Carl DeMaio, a candidate to represent California Congressional District 52 ("CA-52"), Federal Election Commission Candidate ID H4CA52051. Mr. DeMaio came in second during the primary

election on June 3, 2014, ensuring him a place on the ballot in the general election on November 4, 2014.

20.    On November 4, 2014, under California's "top two" primary system, Carl DeMaio will face incumbent and first-place primary finisher Scott Peters in the contest to represent CA-52. Congressman Peters was the only member of the Democratic Party on the ballot to represent CA-52 during the June 3, 2014 primary, and thus, did not face any significant primary challengers.

21.    Ms. Holmes contributed $2,600 to Mr. DeMaio after the California primary. She wishes to contribute an additional $2,600 at this time, for a total of $5,200, because she did not contribute to Mr. DeMaio during the primary.

22.    Plaintiff Paul Jost supports Mariannette Miller-Meeks, a candidate to represent Iowa's Second Congressional District ("IA-02"), Federal Election Commission Candidate ID H8IA02043. Dr. Miller-Meeks won her primary election on June 3, 2014.

23.    On November 4, 2014, Dr. Miller-Meeks will face incumbent David Loebsack in the contest to represent IA-02. Congressman Loebsack was the only candidate to represent IA-02 listed on the ballot in the 2014 Democratic primary, and thus, did not face any significant primary challengers.

24.    Mr. Jost has already contributed $2,600 to Dr. Miller-Meeks for the general election. He wishes to contribute an additional $2,600 at this time, for a total of $5,200. He did not contribute to Dr. Miller-Meeks during the primary.

25.    Plaintiffs do not wish to exceed the base candidate contribution limit over the combined primary and general election periods. 2 U.S.C. § 441a(a)(1)(A) (currently $5,200-$2600 for the primary, and $2600 for the general—as indexed for inflation per 11 C.F.R. § 110.5(b)(3)-(4) at Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, Federal Election Commission, 78 Fed. Reg. 8530, 8532 (Feb. 16, 2013)).

26.    Instead, Plaintiffs Laura Holmes and Paul Jost each wish to give the full $5,200 they are allowed to contribute to a candidate with whom they wish to associate, but do so entirely for the general election. Mr. Jost and Ms. Holmes wish to fully associate with candidates, unencumbered by the artificial distinction between primary and general elections, and the arbitrary and discriminatory rules defining primary election debt.

## V.    CAUSES OF ACTION

### Count 1
**Declaratory judgment that 2 U.S.C. §§ 441a(a)(1)(A) and 441a(a)(6) are unconstitutional as applied to Plaintiffs because they violate their First Amendment freedom of political association.**

27.     Plaintiff realleges and incorporates by reference paragraphs 1-26.

28.     Contribution limits implicate fundamental First Amendment interests. *Buckley v. Valeo*, 424 U.S. 1, 24-25 (1976).

29.     In *Buckley*, the Supreme Court identified campaign contributions as a component of the "right to associate" and therefore determined that limits on such contributions are subject "to the closest scrutiny." 424 U.S. at 25 (citing *NAACP v. Ala. ex rel Patterson*, 357 U.S. 449, 460-61 (1958)).

30.     While the right to associate and participate in politics "is not absolute," the government must "demonstrate[] a sufficiently important interest and employ[] means closely drawn to avoid unnecessary abridgement of associational freedoms." *Buckley*, 424 U.S. at 25 (internal quotations and citations omitted).

31.     Prevention of *quid-pro-quo* corruption, or the appearance of such corruption, is the only constitutionally sufficient justification for contribution limits. *McCutcheon v. FEC*, 572 U.S. ___, 134 S. Ct. 1434, 1450 (2014); *Buckley*, 424 U.S. at 25, *see also*, *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 388 (2000).

32.     The Supreme Court in *McCutcheon* was clear: "[c]ampaign finance restrictions that pursue other objects [not aimed at preventing *quid-pro-quo* corruption]…impermissibly inject the Government into the debate over who

should govern. And those who govern should be the *last* people to help decide who *should* govern." *McCutcheon*, 134 S. Ct. at 1441-1442. (emphasis in original).

33. The government may not merely assert a "corruption" interest to justify a burden on the fundamental right to associate via contribution limits. *Shrink Mo. Gov't PAC*, 528 U.S. at 392 (citing and discussing *Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 616 (1996) (opinion of Breyer, J.)).

34. In other words, a contribution limit must be properly tailored to vindicate the government's interest, otherwise it is unconstitutional. *McCutcheon*, 134 S. Ct. at 1444; *see also Randall v. Sorrell*, 548 U.S. 230, 248 (2006).

35. The novelty and plausibility of the asserted harm to be avoided will determine how much empirical evidence is required to justify the government's regulation. *Shrink Mo. Gov't PAC*, 528 U.S. at 391.

36. *McCutcheon* discussed the FECA framework that bifurcates contribution limits between primary and general elections. *McCutcheon*, 134 S. Ct. at 1442. Together, the Court referred to these as "base limits." *Id*.

37. In discussing the base limits in the corruption context, the Court considered the *total* limit, without respect to the artificial distinction between primary and general elections. *See*, *e.g.*, *id*. at 1448 ("if all contributions fall within the base limits Congress views as adequate to protect against corruption. The individual

may give up to $5,200 each to nine candidates…"); at 1451 ("under the dissent's view, it is perfectly fine to contribute $5,200 to nine candidates but somehow corrupt to give the same amount to a tenth.")

38.     The Court considered the *total* $5,200 as the "base limit" at or below which there is no threat of actual or apparent corruption. *Id*. at 1452 ("[b]ut Congress's selection of a $5,200 base limit indicates its belief that contributions of that amount or less do not create a cognizable risk of corruption").

39.     The bifurcated candidate contribution limit prevents contributors from giving the full, non-corrupting contribution amount, at the time they feel is most critical in the electoral cycle. That is, the law allows a contributor to associate with an individual candidate up to $5,200 per election cycle. Ms. Holmes and Mr. Jost will abide by that limit. They do not wish, however, to split their contributions between the primary and general elections in order to fully exercise their associational rights. Instead, they wish to give to candidates challenging incumbents who did not face significant opposition from within their own political party.

40.     Artificially bifurcating the $5,200 between general and primary elections does not further any anticorruption interest. This is particularly so where, as in both CA-52 and IA-02, the incumbent faced no substantial primary challenger.

41.     Because the government lacks a cognizable interest in artificially bifurcating the $5,200 individual candidate contribution limit, 2 U.S.C. § 441a(a)(1)(A) is unconstitutional as applied to Plaintiffs' planned contributions.

## Count 2
### Declaratory judgment that 2 U.S.C. §§ 441a(a)(1)(A) and 441a(a)(6) are unconstitutional as applied to Plaintiffs because they violate their Fifth Amendment rights to equal protection of the law.

42.     Plaintiff realleges and incorporates by reference paragraphs 1-41.

43.     The Fifth Amendment's Due Process Clause guarantees equal protection of the law, and the analysis thereof is the same as under the Fourteenth Amendment. *Buckley*, 424 U.S. at 93; *Bolling*, 347 U.S. at 499.

44.     The Supreme Court has not addressed the issue of bifurcated individual candidate contribution limits. *McCutcheon* struck down the *aggregate* limits while emphasizing that the $5,200 base limit was not corrupting. *McCutcheon*, 134 S. Ct. at 1462, 1451.

45.     *Buckley* only upheld FECA's contribution limits on their face. 424 U.S. at 35 ("[i]n view of these considerations, we conclude that the impact of the Act's $1,000 contribution limitation on major-party challengers and on minor-party candidates does not render the provision unconstitutional on its face").

46.    The Court specifically allowed for the possibility of a subsequent challenge due to "invidious discriminat[ion]." *Buckley*, 424 U.S. at 31 n. 33. ("[s]ince an incumbent is subject to these limitations to the same degree as his opponent, the Act, on its face, appears to be evenhanded. The appearance of fairness, however, may not reflect political reality").

47.    *Buckley*'s facial decision focused on the candidates—both challengers and incumbents—in the record before it. It did not squarely address the issue of the rights of *contributors*. *Id*. at 33.

48.    In 2002, Congress passed the Bipartisan Campaign Reform Act. Pub. L. 107-155, 116 Stat. 81 (2002) ("BCRA"). BCRA increased the contribution limits and indexed them for inflation. BCRA § 307, 116 Stat. at 102 (codified at 2 U.S.C. § 441a(a)(1)). It did not modify the distinction between primary and general elections found at 2 U.S.C. § 441a(a)(6).

49.    After BCRA's enactment, it faced an omnibus challenge in *McConnell v. FEC*, 540 U.S. 93 (2003).

50.    *McConnell* did not address the issue of bifurcated contribution limits. Some of the plaintiffs challenged the *increase* in contribution limits, but the Court declined to reach the issue on jurisdictional and standing grounds. *Id*. at 227-29.

51.    In 2008, the Supreme Court considered asymmetrical contribution limits, again in the context of a candidate's challenge. *Davis v. FEC*, 554 U.S. 724, 744 (2008).

52.    *Davis* involved some of BCRA's substantive changes to the law, including the "millionaire's amendment." *Id*. at 729 (discussing BCRA § 319(a), 116 Stat. at 108 (codified at 2 U.S.C. § 441a-1(a))). BCRA § 319(a) permitted candidates who faced a self-financed opponent to raise money at three times the base contribution limit. BCRA § 319(a); *Davis*, 554 U.S. at 738.

53.    The justification asserted in support of the asymmetrical contribution limit in *Davis* was to level the playing field by artificially inflating the resources of non-wealthy candidates. *Id.* at 741.

54.    The Court explained that "[w]e have never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Id*. at 738.

55.    The Court found this asymmetry in the contribution limits to be a *First Amendment* harm. *Id.* at 739; *cf SpeechNow.org v. FEC*, 599 F.3d 686, 697 (D.C. Cir. 2010) (noting that *Davis* found "asymmetrical contribution limits were unconstitutional").

56.   Because the Court resolved *Davis* under the First Amendment, it did not reach the Fifth Amendment claims. 554 U.S. at 744 n. 9.

57.   Just this year, the Court reiterated this reasoning in *McCutcheon*. Considering the associational rights of contributors, the Court held that any government interest in "reduc[ing] the amount of money in politics" or "restrict[ing] the political participation of some in order to enhance the relative influence of others" is insufficient to justify contribution limits. *McCutcheon*, 134 S. Ct. at 1441.

58.   Just before the Court released its *McCutcheon* opinion, the Tenth Circuit faced a similar problem of bifurcated limits in construing a state statute. In *Riddle v. Hickenlooper*, contributors to a campaign challenged Colorado's preferential treatment of candidates of "major parties" over minor party candidates, independent candidates, and write-in candidates. *Riddle v. Hickenlooper*, 742 F.3d 922, 924 (10th Cir. 2014).

59.    The law at issue in *Riddle*

> effectively removed any potential time limitations on when a candidate committee could accept contributions when a primary is involved. For money ostensibly given for the primary, the candidate committee could accept the contribution and spend it during the general election; and, for money ostensibly given for the general election, the committee could accept the contribution and spend it even before the primary.

*Id*.

60.    However, this applied *only* to "major party" candidates—minor party,

independent, and write-in candidates did not receive such a benefit. *Id.* at 924-25.

61.    The case came before the Tenth Circuit on appeal from cross motions for

summary judgment based upon equal protection claims. *Id*. at 925-926.

62.    In determining the "threshold issue" of "whether the 'disfavored parties' []

are similarly situated to the 'favored parties," the Tenth Circuit held that the focus

is on the *contributors*, not the candidates in the race. *Id*. at 926.

63.    The Colorado law at issue did "not set contribution limits based on who has

a primary and who doesn't. Instead, the statute blurs the distinction by allowing

Republican and Democratic candidates to collect and spend the entire

[contribution] after the primary." *Id*.

64.    In short, the Colorado statute "create[d] a basic favoritism between

candidates vying for the same office." *Id* at 929.

65.    However, the Tenth Circuit did note

> We do not suggest that the constitution would forbid any contribution
> limits based on an election cycle. But here the State of Colorado has
> created different contribution limits for candidates running against
> each other, and these differences have little to do with fighting
> corruption.

*Id*. at 930.

66.    Functionally, the federal system is the same as Colorado's in *Riddle*—if one of the federal candidates does not face a substantial primary opponent. Such a candidate can use the "primary" contributions to run advertisements promoting his campaign or attacking candidates of the opposing party. Yet opposing party candidates—if locked in a primary contest—enjoy no such luxury.

67.    Ms. Holmes and Mr. Jost wish to support the victor of the primary against the incumbent. As a result, they can give only half the money as many contributors who have already supported the opposing party candidate. The result is asymmetrical contribution limits based upon factors entirely out of the contributor's (or even the candidate's) control. Thus, 2 U.S.C. § 441a(a)(1)(A) artificially favors some contributors (and candidates) over others. This artificial distinction is made worse by the fact that incumbents may begin raising money for the 2014 election immediately after the November 2012 election—or, in the case of a senate race, immediately after the November 2008 election—well before the time the vast majority of challengers have declared their candidacy for the 2014 election. Thus, contributors to some challengers are permitted to associate over a longer period of time and to a greater extent than others, denying equal protection of the campaign finance laws.

68.    Further, the dates for primaries are not uniform across the United States. Public Disclosure Division, "2014 Congressional Primary Dates and Candidate Filing Deadlines for Ballot Access," FEDERAL ELECTION COMMISSION (2014) *available at* http://www.fec.gov/pubrec/fe2014/2014pdates.pdf.

69.    Thus, the contributions may need to stretch further or be compressed as compared to other races in other states. The effectiveness of the association created by the contribution changes based upon individual state primary dates. This may be alleviated by allowing Plaintiffs to contribute the full $5,200 in a single contribution to the candidate of his choice regardless of the date of the primary.

70.    As in *Riddle*, the government has no corruption interest in deciding, artificially, how money is contributed so long as it is under the limits found by Congress to be non-corrupting.

71.    Congress may set contribution limits, but it must make these limits the same for everyone. Allowing for "extra" contributions by contributors supporting a candidate running unopposed in the primary is functionally the same as the differing contribution limits reviewed in *Davis* and *Riddle*. Such asymmetry denies Plaintiffs' equal protection rights under the Fifth Amendment.

## VI.    PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.      A declaratory judgment that 2 U.S.C. §§ 441a(a)(1)(A) and 441a(a)(6) are unconstitutional as-applied to Plaintiffs because they violate Plaintiffs' freedom of political association guaranteed under the First Amendment.

B.      A declaratory judgment that §§ 441a(a)(1)(A) and 441a(a)(6) are unconstitutional as-applied to Plaintiffs because they violate the equal protection of the law guaranteed by the Fifth Amendment.

C.      An injunction barring enforcement of §§ 441a(a)(1)(A) and 441a(a)(6)'s artificial bifurcation of individual candidate contributions.

D.      Reasonable costs and attorneys' fees.

E.      Such equitable or other relief as this Court may consider just and appropriate.


Respectfully submitted this the 21st day of July, 2014.

> /s/ Allen Dickerson
> Allen Dickerson
> Center for Competitive Politics
> 124 S. West Street
> Suite 201
> Alexandria, Virginia 22314
> Phone: 703.894.6800
> Facsimile: 703.894.6811
> adickerson@campaignfreedom.org
>
> *Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2014, the foregoing document was served on the following, via first class mail:


Lisa J. Stevenson,
Deputy General Counsel – Law
Federal Election Commission
999 E Street, N.W.
Washington, D.C. 20436
Phone: 202.694.1650
Facsimile: 202.219.0260

*Counsel for Defendant, FEC*


Civil Process Clerk
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

Eric H. Holder,
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530


s/ Allen Dickerson
Allen Dickerson