**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAURA HOLMES | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAUL JOST, | ) | |
| | ) | |
|     Plaintiffs, | ) | Civil Action No. 1:14-cv-01243-RMC |
| | ) | |
|   v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
|     Defendant. | ) | |

---

**PLAINTIFFS' REPLY MEMORANDUM ON MOTION FOR PRELIMINARY INJUNCTION**

---

 s/ Allen Dickerson
Allen Dickerson (DC Bar No. 1003781)
Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Telephone: 703-894-6800
Facsimile: 703-894-6811
adickerson@campaignfreedom.org

September 15, 2014                    *Counsel for Plaintiffs*

# Table of Contents

Table of Contents .................................................................................................................. i

Table of Authorities .......................................................................................................... iii

Introduction ......................................................................................................................... 1

Argument .............................................................................................................................. 2

    I.    The Commission Fails to Offer Any Anti-Corruption Rationale for the Bifurcated Limit As Applied to Plaintiffs............................................................................. 2

        A.  Plaintiffs do not dispute that Congress may impose contribution limits in order to prevent actual or apparent *quid pro quo* corruption ............................................. 2

        B.  The Supreme Court requires the government to demonstrate that a restriction on contributions—structural or otherwise—furthers an anti-corruption interest, and that the restriction is narrowly drawn to that interest. The FEC has failed to do so here.................................................................................................................... 5

        C.  While the Commission mounts a facial defense of the challenged statute, Plaintiffs have brought an as-applied challenge ...................................................... 8

        D.  The recent decision in *McCutcheon v. FEC* provides strong authority for the unconstitutionality of the bifurcated contribution limit at issue here ..................... 9

    II.   The Bifurcated Contribution Limits Do Not Apply Equally to Plaintiffs and Others Similarly Situated, Denying Plaintiffs the Equal Protection of the Laws................... 10

        A.  Because the bifurcated limits infringe upon Plaintiffs' ability to contribute similarly to those giving to candidates without a significant primary challenger, they implicate a fundamental right. Therefore, rational basis review is inappropriate. ....................................................................................................... 12

        B.  FECA's bifurcated limits restrict the associational rights of supporters of candidates who faced significant primary opponents as opposed to supporters of unchallenged candidates. .................................................................................. 14

        C.  The Commission misunderstands Plaintiffs' case law. ......................................... 15

        D.  The Commission misunderstands *Riddle v. Hickenlooper*. ................................... 16

    III.  Plaintiffs Have Demonstrated An Irreparable Harm, Which May Only Be Mitigated By Entrance of an Injunction. ..................................................................................... 18

    IV.  Granting Plaintiffs' Motion for a Preliminary Injunction is in the Public Interest ...... 21

Conclusion ........................................................................................................................... 22

## Table of Authorities

**Cases**

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
    131 S. Ct. 2806 (2011) ................................................................................15

*Bates v. City of Little Rock*,
    361 U.S. 516 (1960) ...................................................................................13

*Bread PAC v. FEC*,
    455 U.S. 577 (1982) ...................................................................................15

* *Buckley v. Valeo*,
    424 U.S. 1 (1976) .................................................................................. *passim*

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2007) …..............................................................19

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ...................................................................................12

*Davis v. FEC*,
    554 U.S. 724 (2008) ...............................................................................4, 15

*Elrod v. Burns*,
    424 U.S. 347 (1976) ...................................................................................20

*Eu v. San Francisco County Democratic Central Comm.*,
    489 U.S. 214 (1989) …................................................................................19

*FEC v. Colo. Republican Fed. Campaign Comm.*,
    533 U.S. 43 (2001) .......................................................................................4

*Gilmore v. Montgomery*,
    417 U.S. 556 (1974) ...................................................................................10

*Gordon v. Holder*,
    721 F. 3d 638 (D.C. Cir. 2013) ................................................................22

*Holland v. Williams Mt. Coal Co.*,
    496 F.3d 670 (D.C. Cir. 2007) ..................................................................16

*Ill. State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1985) ...................................................................................12

*Immigration and Natural. Serv. v. Chadha*,
    462 U.S. 919 ..........................................................................21

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ...............................................7

*McConnell v. FEC*,
    540 U.S. 93 (2003)..............................................................3, 13

* *McCutcheon v. FEC*,
    572 U.S. ___, 134 S. Ct. 1434 (2014)................................. *passim*

*Monitor Patriot Co. v. Roy*,
    401 U.S. 265 (1971).................................................................12

*NAACP v. Button*,
    371 U.S. 415 (1963).................................................................20

*Nixon v. Shrink Mo. Gov't PAC*,
    528 U.S. 377 (2000)..............................................................4, 12

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992)....................................................................11

*Randall v. Sorrell*,
    548 U.S. 230 (2006)............................................................3, 6, 7

* *Riddle v. Hickenlooper*,
    742 F.3d 922 (10th Cir. 2014) ....................................13, 16, 17, 18

*Rufer v. FEC*,
    2014 U.S. Dist LEXIS 114762 (Aug. 19, 2014)....................21, 22

*United States v. Windsor*,
    570 U.S. ____, 133 S. Ct. 2675 (2013)...................................18

*Wagner v. FEC*,
    717 F.3d 1007, 1017 (D.C. Cir. 2013) ...................................13

*Wagner v. FEC*,
    854 F. Supp. 2d 83 (D.D.C. 2012) .........................................13

*Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) ...............................................19

**Constitutions, Statutes, and Regulations**

52 U.S.C. § 30110......................................................................................................13, 15

11 C.F.R. § 110.1(b)(3)(i)(C)...............................................................................20

Colo. Rev. Stat. §§ 1-45-103.7(3)-(4) ................................................18

**Other Authorities**

120 Cong. Rec. 10562 (1974) ..............................................................................5

Congressional Candidates and Committees, Federal Election Commission
    (June 2014),
    http://www.fec.gov/pdf/candgui.pdf.........................................................17

"Iowa Primary Results", New York Times (June 4, 2014),
    http://elections.nytimes.com/2014/results/primaries/iowa ..............14

Maureen Straub Kordesh,
    *Essay: Navigating the Dark Morass: A First-Year Student's Guide to the Library*,
    19 Campbell L. Rev. 115 (1996)...............................................................16

United States Representative in Congress by District, Statewide Direct Primary Election –
    Statement of Vote, California Secretary of State (June 3, 2014)
    http://www.sos.ca.gov/elections/sov/2014-primary/pdf/63-congress.pdf .......................14

**Introduction**

Contribution limits, however understood, can only survive constitutional scrutiny if they are "closely drawn" to the prevention of real or apparent *quid pro quo* corruption. *McCutcheon v. FEC,* 572 U.S. ___, 134 S. Ct. 1434, 1444 (2014). In its opposition briefing, the Federal Election Commission ("FEC" or "Commission") cites no case where the bifurcation of a base contribution limit was addressed and upheld, nor does it provide any explanation as to precisely how the bifurcation of the federal contribution limit fights corruption. As a result, the FEC has provided no evidence that the bifurcated limit is "closely drawn" to an appropriate interest, and Plaintiffs have demonstrated a likelihood of success on the merits of their First Amendment claim.

Furthermore, in this instance, the Federal Election Campaign Act ("FECA") treats Plaintiffs differently from other contributors. Federal law allows individuals to give $5,200 to unchallenged candidates, who may use the entire sum for general election purposes. Yet, Plaintiffs are prohibited from doing this with respect to two candidates they support, both of whom did face primary opponents. Because it imposes this dissimilar treatment, the law deprives Plaintiffs of the equal protection of the laws. Accordingly, they have also demonstrated a likelihood of success on the merits of their as-applied Fifth Amendment challenge.

Plaintiffs wish to associate with particular candidates in a particular election. Limiting their ability to do so imposes a plainly irreparable injury. Moreover, there is no public interest whatsoever in the enforcement of an unconstitutional law.

Consequently, this Court should grant Plaintiffs' motion.

**Argument**

**I.     The Commission fails to offer any anticorruption rationale for the bifurcated limit as applied to Plaintiffs.**

Much of the Commission's brief recites precedent that, while correctly stated, does not resolve this motion. That is because the Commission fails to treat this case as an as-applied challenge, instead marshaling arguments and authority appropriate to a facial attack on contribution limits generally. Because the Commission cannot demonstrate that the bifurcated contribution limit furthers any anticorruption interest *as applied to Plaintiffs,* (or, indeed, at all) it fails to carry its burden and an injunction should issue.

Plaintiffs wish to give $5,200—the dollar amount at which Congress determined there is no threat of *quid pro quo* corruption—to their preferred candidates for purposes of the general election. They are prohibited from doing so by federal law. Meanwhile, these candidates' opponents were permitted to receive that *exact* amount from each of their supporters, for the *same* general election. Whatever purpose this rule may serve, it is not tailored (or even rationally related) to the furtherance of an anti-corruption interest.

**A.     Plaintiffs do not dispute that Congress may impose contribution limits in order to prevent actual or apparent *quid pro quo* corruption.**

The Commission is correct that Congress may constitutionally impose contribution limits. It cites a number of cases that stand for this general proposition—which Plaintiffs do not dispute. What the FEC does not cite is any case that goes beyond this simple holding to consider the question presented here: once Congress says how much a citizen may contribute to a candidate, what is the *anti-corruption* rationale for dividing that amount on a per-election basis?

For instance, *Buckley v. Valeo*, 424 U.S. 1 (1976), "affirmed the constitutionality of FECA's individual contribution limits" Opp. Br. at 5. This was because, on their face, those

2

limits "served the government's important anti-corruption interests," given that, "'to the extent that large contributions are given to secure a political *quid pro quo* from current and potential officeholders, the integrity of our system of representative democracy is undermined.'" Opp. Br. at 5 (quoting *Buckley*, 424 U.S. at 26-27). In addition to preventing actual *quid pro quo* (dollars for official favors) transactions, the *Buckley* Court held that the base limits were constitutionally justified to the extent that they prevented the appearance of such corruption. Opp. Br. at 5 (citations omitted).

But this was a facial holding. *Buckley* nowhere reviewed the per-election element of the base contribution limits. Nor did *McConnell v. FEC*, 540 U.S. 93, 298 (2003) (Kennedy, J., concurring in the judgment in part and dissenting in part), another facial decision that merely reiterated that the government may limit contributions to prevent corruption, but did not rule on the constitutionality of bifurcating that limit—as the FEC's parenthetical explanation makes clear. Opp. Br. at 12 (Justice Kennedy's *McConnell* opinion "observ[ed] that *Buckley* recognized Congress's 'interest in regulating the appearance of corruption that is 'inherent in a regime of large individual financial contributions'") (quotation marks omitted).

The Commission's myriad examples of judicial deference to legislative determinations concerning the *level* of contribution limits fail for the same reason. *See, e.g.,* Opp. Br. at 20 (characterizing *Buckley* as establishing a "general rule that courts do not second-guess Congress's decision regarding the exact dollar figure at which to set a contribution limit") (citing *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (Breyer, J., plurality op.) ("In practice, the legislature is better equipped to make such empirical judgments, as legislators have particular expertise in matters related to the costs and nature of running for office. Thus ordinarily we have deferred to the legislature's determination of such matters.") (quotation marks and citation

omitted); *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 446 (2001) ("[T]he dollar amount of the limit need not be 'fine tun[ed]' . . . .") (quoting *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 387-88 (2000), alterations in original); *cf. Davis v. FEC*, 554 U.S. 724, 737 (2008) ("When contribution limits are challenged as too restrictive, we have extended a measure of deference to the judgment of the legislative body that enacted the law.") (citing *Randall*, *Shrink Missouri*, and *Buckley*)).

But while the courts may lack a "scalpel to probe" the propriety of an exact dollar amount,[1] Congress has already determined, in this particular election, that $5,200 is the amount that may be contributed consistent with preventing *quid pro quo* corruption. The problem here is not one of legal deference on that score. Because plaintiffs do not challenge "the exact dollar figure" of the contribution limit, these various judicial statements are beside the point. Contributors to David Loebsack and Scott Peters may give each of these candidates $5,200 to spend in the general election. Plaintiffs would like to give the same amount to those legislators' opponents, for the same general election.

This is precisely why Plaintiff's as-applied challenge to the *structure* of the base limits is novel. They do not challenge the amount they may give to candidates, merely when and how they must give it. Plaintiffs readily concede that, to prevent corruption, Congress may limit Plaintiffs' total contributions to these candidates to $5,200.

---

[1] *See Buckley*, 424 U.S. at 30.

**B.     The Supreme Court requires the government to demonstrate that a restriction on contributions—structural or otherwise—furthers an anti-corruption interest, and that the restriction is narrowly drawn to that interest. The FEC has failed to do so here.**

If none of the Commission's cases uphold the per-election bifurcation of the federal base limit, the question remains whether the bifurcation nonetheless furthers an anti-corruption interest.

The Parties agree on the applicable standard of review: in order to justify the bifurcated limit, the government must "'demonstrate [] a sufficiently important interest and employ[] a means closely drawn to avoid unnecessary abridgement of associational freedoms.'" Opp. Br. at 11-12 (quoting *McCutcheon v. FEC*, 134 S. Ct. 1434, 1444 (2014)). They also appear to agree that the only relevant governmental interest is the prevention of actual or apparent *quid pro quo* corruption. *McCutcheon v. FEC,* 134 S. Ct. 1434, 1450 (2014) ("This Court has identified only one legitimate governmental interest in restricting campaign finances: preventing corruption or the appearance of corruption").

How does the bifurcation of the federal contribution limit prevent corruption? How can the same $5,200 be more corrupting if given on the day after the primary election rather than the day before? We are never told.

While the FEC's brief states that "FECA's Individual Contribution Limits Are Closely Drawn to Prevent Actual and Apparent Corruption," that section of the brief is dedicated to proving that individual contributions limits, as such, are generally constitutional. Opp. Br. at 12. For the reasons already given, that effort is unnecessary: Plaintiffs concede this point. The same is true for the Commission's efforts to demonstrate that Congress has the authority to set the precise amount of such limits. Opp. Br. at 19.

What on-topic authority the opposition brief does present is unpersuasive. Take the Commission's characterization of the plurality opinion in *Randall v. Sorrell:*

> The Supreme Court has in fact indicated that a per-cycle limit on contributions to candidates is a "danger sign[]" of potential unconstitutionality as compared to limits that are set per-election, precisely the *opposite* of plaintiffs' contentions here. *See Randall v. Sorrell,* 548 U.S. 230, 249 (2006) (Breyer, J., plurality op.) (expressing concerns about a state election-cycle-based contribution limit).

Opp. Br. at 17 (citing 548 U.S. at 249 (2006)).

At that page, Justice Breyer notes that: "The Act sets its limits per election cycle, which includes both a primary and a general election. Thus, in a gubernatorial race with both primary and final election contests, the Act's contribution limit amounts to $200 per election per candidate…" *Randall,* 548 U.S. at 249. But he says this in order to simplify the math for his next point: "These limits are well below the limits th[e] Court upheld in *Buckley*." *Id.* at 250. Because FECA has a per-election limit, and Vermont set a per-cycle limit, comparing the two cases required a lowest common denominator. Justice Breyer does not state that the per-election-cycle limit is *itself* a "warning sign." His next paragraph, which compares Vermont's limits to those in multiple other states, makes this clear. *Id.* at 250-51. As does his conclusion: "In sum, Act 64's contribution limits are substantially lower than both the limits we have previously upheld and comparable limits in other States." *Id.* at 253. Justice Breyer is doing math—not making a constitutional claim about per-election limits *per se.*

The Commission also points to Justice Thomas's concurrence in *Randall.* Opp. Br. at 17. It is true that Thomas considered the per-election-cycle limit to be one of the Plurality's "danger signs." *Id.*; *Randall* at 268. This is, as just stated, a difficult conclusion to draw from Justice Breyer's text and may reflect a dissenter's misunderstanding of the controlling opinion. But in any event, while the FEC notes that his opinion "discuss[es] inequities created by election-cycle-

based contribution limits and describe[es] election-cycle structure as 'constitutionally problematic,'" Opp. Br. at 17, Justice Thomas does so because Vermont's system "substantially advantages candidates in a general election who did not face a serious primary challenge." *Randall* at 268. That is precisely Plaintiffs' point.

Similarly, in *Lair v. Bullock*, cited at page 18 of the FEC's brief, the Ninth Circuit cited Justice Thomas for the proposition that per-election-cycle limits were a "danger sign[]." 697 F.3d 1200, 1208 (9th Cir. 2012)  It then, in a cursory, two sentence-analysis, noted that "Montana['s] contribution limits apply to each election in a campaign, so, the amount an individual may contribute to a candidate doubles when the candidate participates in a *contested* primary. *Id*. (quotation marks, brackets, and citation omitted; emphasis supplied). Again, this concern is central to Plaintiffs' claims; the case does not help the FEC.

Of course, each of these cases claimed that a particular contribution limit was too low. *Randall,* 548 U.S. at 248 ("Following *Buckley*, we must determine whether Act 64's contribution limits prevent candidates from amassing the resources necessary for effective [campaign] advocacy; whether they magnify the advantages of incumbency to the point where they put challengers to a significant disadvantage; in a word, whether they are too low and too strict to survive First Amendment scrutiny") (citation, quotation marks omitted). In *Randall*, they were—but that is not Plaintiffs' specific claim here, and these cases are beside the point.

In addition to these brief and unhelpful citations, the Commission offers a number of reasons why the per-election bifurcation is "sensible" and "equitable." Opp. Br. at 15, 19.  This belief seems based upon the FEC's desire to "account[] for the lack of uniformity in federal electoral contests," specifically the presence of "primary runoff elections" in some states. *Id.* at

15. The Commission makes much of a recent primary runoff in Mississippi. *Id.* at 16-17. What any of this has to do with anti-corruption efforts is never stated.

In sum, the FEC argues that Congress has the authority to set contribution limits, that courts should defer to the amount of such limits, and that the current system provides some flexibility when dealing with different electoral systems. But it nowhere identifies an anti-corruption interest served by bifurcating the federal limit, explains how that interest is served, or otherwise carries its burden.

**C.**     **While the Commission mounts a facial defense of the challenged statute, Petitioners have brought an as-applied challenge.**

Plaintiffs do not request an overhaul of Federal law, or argue for a sweeping remedy that will upend election financing. Instead, they seek meaningful review of the facts of their case, since there is no precedent resolving the constitutional issue they raise.

The FEC does not meaningfully engage with the facts of Plaintiffs' as-applied challenge. For instance, as mentioned *supra*, the Commission focuses on a runoff election in Mississippi. This is puzzling as neither election in this case involves a runoff, or ever presented the possibility of one.  Rather, they involve the familiar, two-step election process as it is practiced in Iowa and California. In fact, states with runoff elections—like Mississippi—are a distinct minority. As the Commission points out, "nine states currently provide for primary runoff elections in federal electoral contests under varying circumstances."  (Opp. Br. at 15 n. 4). It never explains why a rare situation that may occur in nine states justifies a constitutional violation in the other 41.

Similarly, neither of the candidates Miller-Meeks and DeMaio challenge faced opposition from within their party in the primary election. Compl. ¶ 40. This is a fact. It is also a fact that Plaintiffs "can give only half the money as many contributors who have already supported the

opposing party candidate." *Id.* ¶ 67. That is the crux of their Complaint. But the Commission sidesteps these facts in order to focus upon alternate, dissimilar (and rare) examples like Mississippi's recent runoff.

Plaintiffs ask for a narrow remedy. Having given nothing to their preferred candidates in the primary election, they would now like to contribute the full $5,200 Congress has found to be non-corrupting. They ask for this in the routine and familiar context of a two-election contest. That the FEC felt the need to make its point with the far less routine example of a primary runoff is telling.[2]

### D. The recent decision in *McCutcheon v. FEC* provides strong authority for the unconstitutionality of the bifurcated contribution limit at issue here.

Of the authorities the Commission cites, *McCutcheon v. FEC* is arguably the most analogous. There, the Court took as a given that the base limit on contributions to candidates was $5,200. *McCutcheon v. FEC,* 134 S. Ct. 1434, 1448 (2014) (plurality opinion) ("to put it in the simplest terms, the aggregate limits prohibit an individual from fully contributing to the primary and general election campaigns of ten or more candidates, even if all contributions fall within the base limits Congress views as adequate to protect against corruption."). The Court found that an additional limit on the number of candidates with whom a donor could associate did not further an anticorruption interest, in part because the underlying $5,200 limit *already* prevents corruption. *Id.* at 1452.

---

[2] Plaintiffs do not ask for any relief involving runoff elections. But if they, or another litigant, were to do so, there is no reason the FEC could not simply revise the base contribution limit to account for the number of elections a candidate has participated in. If, in the case of the cited Mississippi primary runoff, Congress has determined that a contribution of $7,800 to those candidates is noncorrupting, that is the base limit. Obviously, contributions given earlier in the cycle would count against that limit. Equally clearly, the limit would adjust once the runoff election became certain. This approach is no more unworkable than applying a distinct limit to each of the separate elections.

In fact, the *McCutcheon* Court never discusses bifurcation, except to quote FECA. FECA's bifurcation of the base limit was not at issue in that case. But the Court nonetheless explicitly stated that "Congress's selection of a $5,200 base limit indicates its belief that contributions of that amount or less do not create a cognizable risk of corruption." *Id.* at 1452.

Plaintiffs seek to make that non-corrupting contribution. Other contributors have been permitted to make it. Unsurprisingly, given *McCutcheon*'s clear statement on the subject, the Commission has been unable to explain how Plaintiffs' contributions will lead to *quid pro quo* corruption or its appearance. Without such an explanation, this application of FECA cannot survive the heightened scrutiny applicable in contribution limit cases.

## II.    The Bifurcated Contribution Limits Do Not Apply Equally to Plaintiffs and Others Similarly Situated, Denying Plaintiffs the Equal Protection of the Laws.

"The Equal Protection Clause of the Fourteenth Amendment…proscribe[s]" against "state action of every kind that operates to deny any citizen the equal protection of the laws." *Gilmore v. Montgomery*, 417 U.S. 556, 565 (1974) (citation and quotation marks omitted). The "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley*, 424 U.S. at 93 (citation omitted).

In conducting its Fifth Amendment equal protection analysis, however, the FEC errs by suggesting this case deals with "statutory provisions that do not create any classifications whatsoever [and therefore] do not implicate equal protection concerns." Opp. Br. at 22 (brackets supplied). Thus, the Commission argues that "the Act's per-election limit…does not treat any group of persons differently" and therefore "does not classify anyone." Opp. Br. at 22. The FEC also notes that the Supreme Court has previously declined a Fifth Amendment challenge. Opp. Br. at 22-23.

10

But the FEC's positions are all related to a *facial* challenge against contribution limits. Its citations to *Buckley* relate to a challenge positing "that the [FECA] contribution limitations work such invidious discrimination between incumbents and challengers that the statutory provisions must be declared unconstitutional *on their face*." 424 U.S. at 31 (emphasis supplied). This is inapposite for two reasons. First, Plaintiffs bring a challenge as applied to a specific set of circumstances. Second, that set of circumstances is not based on an incumbent/challenger distinction, but rather the asymmetry posed whenever a candidate who faces a primary challenge competes in the general election against a candidate who ran virtually unopposed during the primary.[3] *Buckley* itself recognized that FECA could pose significant equal protection concerns. *Buckley*, 424 U.S. at 31, n. 33 ("The appearance of fairness, however, may not reflect political reality").

Indeed, one could be forgiven for reading the FEC's brief and believing that Plaintiffs posed such a challenge. But Plaintiffs do not believe the contribution limits are facially invalid—*Buckley* forecloses that possibility—but, rather, that the bifurcated limits prevent Plaintiffs from fully associating with their preferred candidates in the same matter as contributors who would have given $5,200 to the opponents of Mr. DeMaio and Dr. Miller-Meeks on June 2, 2014.

The Constitution's guarantee of equal protection is designed to "keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citation omitted). In this case, the government has implicitly classified contributors giving certain amounts to candidates on the basis of whether that candidate faces a primary challenger or not. It also classifies contributors based upon whether they give for the general election by a certain, arbitrary date.

---

[3] It is true that such candidates are often likely to be incumbents, but that fact is not necessary to Plaintiffs' claims.

Plaintiffs may prevail under an as-applied equal protection challenge to an otherwise proper statute. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) (city's zoning ordinance invalid under equal protection insofar as it necessitated a special permit for a particular group home for the mentally handicapped); *Ill. State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 187 (1985) (striking down, under equal protection, the "Illinois Election Code…insofar as it requires independent candidates and new political parties to obtain more than 25,000 signatures in Chicago"). Indeed, in the equal protection context, determining if a law is unconstitutional "in the circumstances here…is the preferred course of adjudication." *City of Cleburne*, 473 U.S. at 447. Simply because "the distinction between [primary and general]…elections undoubtedly is valid for some purposes does not resolve whether it is valid as applied here." *Ill. State B.d of Elections*, 440 U.S. at 184.

> **A. Because the bifurcated limits infringe upon Plaintiffs' ability to contribute similarly to those giving to candidates without a significant primary challenger, they implicate a fundamental right. Therefore, rational basis review is inappropriate.**

The Commission argues that asymmetric contribution limits do not impinge upon a fundamental constitutional right. But this is belied by the Supreme Court's ruling just last Term that "[t]here is no right more basic in our democracy that the right to participate in electing our political leaders." *McCutcheon v. FEC*, 134 S. Ct. at 1440. The *McCutcheon* Court explicitly determined that one the methods of "exercis[ing] that right" was by "contribut[ing] to a candidate's campaign." *Id.* at 1441.

Nor is *McCutcheon* an outlier—even cases which have determined that contribution limits were constitutionally drawn to deter against corruption or the appearance thereof have recognized the foundational nature of the freedom to contribute. *Shrink Missouri*, 528 U.S. at 386 (contribution limits implicate "the constitutional guarantee" of free association and "has its

fullest and most urgent application precisely to the conduct of campaigns for political office")
(citing *Buckley*, 424 U.S. at 15, quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).

The Commission's suggestion that there is no "fundamental right to structure candidate contributions" misses the point. Opp. Br. at 25 (quotation marks omitted, emphasis removed) The right to contribute is a fundamental one—it "lies at the foundation of a free society." *Buckley*, 424 U.S at 25 (quotation marks and citations omitted). This fundamental liberty may unconstitutionally be impinged directly, such as by extinguishing the right of certain contributors to give at all. *McConnell v. FEC*, 540 U.S. at 231-232 (finding prohibition on contributions by persons "17 years old or younger" unconstitutional under the First Amendment).

But the right to make political contributions, like all First Amendment guarantees, is "protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (citations omitted). And the two most recent courts to consider equal protection challenges to contribution limit regimes have agreed that heightened scrutiny is required. In the *Wagner* case,[4] this court determined that rational basis review was inappropriate given that "Plaintiffs do contend that the challenged provision improperly burdens their fundamental right to associate." *Wagner*, 854 F. Supp. 2d at 96. Meanwhile, the Tenth Circuit in *Riddle v. Hickenlooper* actually gave serious consideration to the fact that strict scrutiny might apply in the equal protection context before simply "assum[ing] that" First Amendment scrutiny "applies when contributors challenge contribution limits based on the Fourteenth Amendment's Equal Protection Clause rather than the First Amendment." 742 F.3d 922, 928 (10th Cir. 2014).

---

[4] *Wagner v. FEC*, 854 F. Supp. 2d 83 (D.D.C. 2012). The D.C. Circuit, on appeal, determined that the *Wagner* plaintiffs claims should have been heard under the expedited review procedure of 2 U.S.C. § 437h (now 52 U.S.C. § 30110). *Wagner v. FEC*, 717 F.3d 1007, 1017 (D.C. Cir. 2013).

**B. FECA's bifurcated limits restrict the associational rights of supporters of candidates who faced significant primary opponents as opponents to supporters of unchallenged candidates.**

The FEC argues that "Plaintiffs have failed to present any…[constitutionally relevant] evidence of discrimination." Opp. Br. at 28. But it is an uncontested fact that any contributor could give $5,200 to an unchallenged candidate, such as Rep. Dave Loebsack, during the primary election, with the full and reasonable expectation that the full contribution would be used for the purpose of succeeding in the forthcoming general election. After all, that is the only election in which he is actually participating in any real sense.

In this vein, the Commission notes  that "[b]ecause FECA defines 'election' to include various types of electoral contests, the total amount that one may contribute to a particular candidate during a particular election cycle depends on how many elections that candidate must participate in to successfully pursue the federal office being sought." Opp. Br. at 6. The problem is that candidates who are unopposed before the general election have not "participated" in two elections, but can collect money as if they have. The fact that one's name is on the ballot—for example, in an unopposed primary election, in the case of David Loebsack,[5] or as the only Democrat on a "top two" ballot, in the case of Scott Peters[6]—does not require "participation" in that election.

---

[5]   "Iowa Primary Results", NEW YORK TIMES (June 4, 2014), http://elections.nytimes.com/2014/results/primaries/iowa.

[6] Four candidates sought to advance to the general election for the 52nd Congressional district: Democratic incumbent Scott Peters, and three Republican candidates. United States Representative in Congress by District, Statewide Direct Primary Election – Statement of Vote, CALIFORNIA SECRETARY OF STATE (June 3, 2014), http://www.sos.ca.gov/elections/sov/2014-primary/pdf/63-congress.pdf.

But one could not say the same for supporters of Dr. Miller-Meeks, who did have to face other candidates in order to secure the Republican nomination. The bifurcation is particularly troublesome for those, such as Plaintiffs, who wish to give only to party nominees. While there are certainly unchallenged candidates that Plaintiffs could also give a full $5,200 to, those candidates are not Mr. DeMaio and Dr. Miller-Meeks. Thus, FECA's provisions are not "evenhanded contribution restrictions on all candidates and contributors." Opp. Br. at 27 (capitalization omitted). That is the core of Plaintiffs' equal protection challenge.

### C.  The Commission misunderstands Plaintiffs' case law.

The FEC's briefing spends a number of pages arguing that Plaintiff inappropriately cited *Davis v. FEC*, 554 U.S. 724 (2008) and *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. ___, 131 S. Ct. 2806 (2011). Opp. Br. at 28-31. But the Commission's grounds are nothing more than the fact that *Davis* and *Arizona Free Enterprise* are not precisely on point. Opp. Br. at 30 (distinguishing BCRA provision challenged in *Davis* from the bifurcated limits, and arguing that "*Arizona Free Enterprise* thus fails to support plaintiffs' arguments largely for the same reasons"). But the mere fact that the Millionaire's Amendment and Arizona's matching funds scheme are distinct from the statute at issue here does not render the Supreme Court's holdings irrelevant. Rather, as discussed in Plaintiffs' Opening Brief, these cases "can only be read as expressing the Court's concern, explicitly raised in both *Buckley* and *Davis*, that governments might impermissibly burden political association and expression by providing some with advantages over others." Pl. Opening Br. at 22-23.

Indeed, the FEC's inability to discover a case that is precisely on point redounds to Plaintiffs' benefit. The purpose of expedited 52 U.S.C. § 30110 review is to ensure that cases which have not been necessarily decided are rapidly certified to the *en banc* Court. *Bread PAC v.*

*FEC*, 455 U.S. 577, 584 (1982) (§ 30110 review necessitated to ensure that that "serious question[s] as to the constitutionality [of a provision]" may be resolved "at the earliest possible time.") (citing Senator James F. Buckley's comments at 120 CONG. REC. 10562 (1974)).

### D.  The Commission misunderstands *Riddle v. Hickenlooper*.

Furthermore, the Opposition Brief asserts that "*Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), does not provide any support for plaintiffs' claims." Opp. Br. at 31. But "[a]ny judicial opinion…is precedent if it involves the same *or similar facts* and the same *or similar question of law*." Maureen Straub Kordesh, *Essay: Navigating the Dark Morass: A First-Year Student's Guide to the Library*, 19 CAMPBELL L. REV. 115, 120 (1996) (emphasis supplied). Courts routinely look to previously decided cases with similar facts and questions of law to guide their resolution of active cases. Guidance can even be found from sister courts or other circuit courts of appeal, which—while non-binding—may "influence [the applying court's] decisions because of their persuasive force." *Holland v. Williams Mt. Coal Co.*, 496 F.3d 670, 674 (D.C. Cir. 2007).

The facts in the Plaintiff's case and the facts in *Riddle* are rather similar, and raise parallel constitutional claims. One of the claims presented by both of these cases involves equal protection of the laws. As discussed in Plaintiffs' opening brief, the Tenth Circuit ruled in favor of an equal protection claim brought by contributors. Pl. Opening Br. at 23 (citing and discussing *Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014)).

*Riddle* involved a statutory scheme which permitted uncontested major party candidates to receive contributions for both the primary and general elections. *Id*. at 924. The *Riddle* Court noted that the additional money raised by the major parties was available "even when there is only one candidate seeking the nomination." *Id*. But a non-major party candidate could receive

primary contributions "only when multiple candidates vie for the nomination." *Id*. Combined, the primary and general election contributions could be spent on the general election. *Id*. at 926.

Like *Riddle*, this case presents an as-applied challenge to the application of a particular statutory scheme to a particular set of facts. The Plaintiffs' preferred candidates face incumbents who faced no practical opposition in earning their spots in the general election. Compl. at ¶¶ 20, 23; Pl. Opening Br. at 4. The incumbents were nonetheless permitted to raise funds for their qualifying "election." Pl. Opening Br.. at 4 n.1. Such funds could then be spent in the general election. CONGRESSIONAL CANDIDATES AND COMMITTEES, FEDERAL ELECTION COMMISSION at 21 (June 2014), http://www.fec.gov/pdf/candgui.pdf ("Nevertheless, the campaign of a candidate running in the general election may spend unused primary contributions for general election expenses").

In both cases, the statutory schemes favored one group of contributors over another. *Riddle*, 742 F.3d at 926; Pl. Opening Br. at 25. What was done by express statutory provision in *Riddle* is, in practice, being done by operation of the bifurcated limit here. In both Colorado and in this case, incumbents ran in what amounted to *pro forma* primary "elections" (where they did not need to expend any resources in order to win) as a means of raising money for the general election.

Thus, the *Riddle* Court's equal protection analysis is useful. The Tenth Circuit demanded "a link between the differing contribution limits and the battle against corruption." *Id.* at 928. When the state could provide no such link, the Tenth Circuit found "the statutory classification is unconstitutional because it [was] not closely drawn to the State's anticorruption goal." *Id*. at 930. This Court, under *McCutcheon*, should require the FEC to demonstrate a similar nexus between the bifurcation of campaign donations under the base limits and the federal government's

anticorruption interest. This is consistent with the proper use of precedent to inform and guide judicial decision-making.

In passing, the Opposition Brief cites Judge Neil Gorsuch's concurrence "suggesting that '[p]erhaps the State might follow th[e federal] model.'" Opp. Br. at 32 (quoting *Riddle*, 924 U.S. at 933) (brackets in original). That quote, however, is an offhand statement in a concurrence which largely concerned the level of scrutiny to apply in a campaign finance case. *See Riddle*, 742 F.3d at 933 (Gorsuch, J., concurring). Federal contribution limits were not before the Tenth Circuit in *Riddle*. The Court of Appeals examined a Colorado law that favored "major party" contributors over "minor party" contributors. *Id*. at 924 (examining COLO. REV. STAT. §§ 1-45-103.7(3)-(4)). In this context, Judge Gorsuch doubted that Colorado's statute could survive any standard of scrutiny:

> *Whatever* level of scrutiny one might reasonably apply here — even spotting (without in any way granting) Colorado its wish that we lift *Buckley*'s somewhat more relaxed level of scrutiny from its First Amendment home and plunk it down into this Fourteenth Amendment equal protection setting — the State's statutory scheme still pretty clearly flunks.

*Id*. at 932 (Gorsuch, J., concurring) (emphasis in original).

The case before this Court simply challenges the bifurcation of the federal base limits between primary and general elections, because that division works to unconstitutionally favor some contributors over others and, being poorly tailored, works a violation of the Fifth Amendment's equal protection guarantee.

### III. Plaintiffs Have Demonstrated An Irreparable Harm, Which May Only Be Mitigated By Entrance of an Injunction.

Political speech and association "lie[] at the foundation of a free society." *Buckley*, 424 U.S. at 25 (quotation marks and citation omitted). Likewise, the equal protection of the laws is fundamental to the American system of government. *United States v. Windsor*, 570

U.S. ___, 133 S. Ct. 2675, 2695 (2013) (Congress "cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment…[which] contains within it the prohibition against denying to any person the equal protection of the laws"). This suit does not concern peripheral or incidental liberties.

While it is true that the "mere[] alleg[ation of] a violation" of constitutional freedoms is insufficient for the entrance of a preliminary injunction, Opp. Br. at 33 (citation and quotation marks omitted), Plaintiffs have demonstrated that the federal bifurcation of contribution limits works a direct and concrete harm.

The First and Fifth Amendment injuries posed to plaintiffs are "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2007) (internal punctuation and emphasis removed) (citation omitted).  Given that Plaintiffs wish to associate with specific candidates in this specific election, it is impossible for a court to make them whole at a later date. *Cf. Id.* ("[t]he possibility that adequate…corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.") (citation omitted). Further, the harm presented is both "certain and great." *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n.*, 758 F.2d 669, 674 (D.C. Cir. 1985). The harm is certain: the bifurcated limits unquestionably prevent Plaintiffs from contributing $5,200 in the general election to their preferred candidates, and unquestionably allowed others to contribute $5,200 to the campaigns of those candidates' opponents for that same election. And this harm is great because it erodes association and speech in the context of electoral politics, where First Amendment rights are most directly at stake. *See Eu v. San Francisco County Democratic Central Comm.*, 489 U.S.

214, 223 (1989) (citation and quotation marks omitted) ("[T]he First Amendment has its fullest and most urgent application…during a campaign for political office").

The FEC's effort to invoke *Elrod v. Burns*, 424 U.S. 347 (1976) is unavailing. Opp. Br. at 33. It is true that "*Elrod* did not eliminate a First Amendment plaintiff's burden to show that its interests are actually threatened or being impaired." Opp. Br. at 33. But Plaintiffs *have* demonstrated that FECA's per-election limit prevents them from fully associating with the candidates of their choosing. If Mr. Jost and Mrs. Holmes were to simply ignore the law and contribute an additional $2,600 to the DeMaio and Miller-Meeks campaigns, they would be prosecuted under federal law. That is an actual threat, and that threat actually impairs their rights. Naturally, as of today, there has been "no governmental action against [Plaintiffs] whatsoever." Opp. Br. at 34. This is unremarkable: the government is not permitted to bring anticipatory charges. The Supreme Court has long recognized that "[t]he threat of sanctions may deter the[] exercise" of First Amendment liberties "almost as potently as the actual application of sanctions." *NAACP v. Button*, 371 U.S. 415, 433 (1963) (citations omitted). Such is the case here.

As regarding the FEC's concerns with the timing of this suit, Plaintiffs note that it would have been impossible to contribute general election funds to either Mr. DeMaio or Dr. Miller-Meeks had they lost their primary elections on the 3rd of June this year. *See* Opp. Br. at 7, (citing 11 C.F.R. § 110.1(b)(3)(i)(C) for proposition that "[i]f a candidate fails to qualify for the general election, then all general-election contributions received by that candidate must…be returned, redesignated, or reattributed.").

Absent preliminary relief, Plaintiffs will "be required to adhere to the regulatory regime that has governed campaign finance for decades." Opp. Br. at 35 (citation and quotation marks

omitted). But that is, in fact, Plaintiffs' point. The contribution limits scheme imposed by FECA is unconstitutional as applied here. Plaintiffs' submission to that regime would work significant First and Fifth Amendment harms, and those harms would be irreparable.

**IV.     Granting Plaintiffs' Motion for a Preliminary Injunction is in the Public Interest.**

The FEC asserts that denying Plaintiffs' motion would serve the public interest due to the antiquity of FECA's contribution limits and the fact that the Act was constitutionally enacted. Opp. Br. at 35 ("In fact, the statutory provisions plaintiffs ask this Court to amend have been on the books for 40 years"; "The public has a strong interest in the enforcement of laws passed by Congress and signed by the President") (citation and quotation marks omitted). But if a law is unconstitutional, its age and method of enactment is irrelevant. *See Immigration and Naturalization Serv. v. Chadha*, 462 U.S. 919, 968 (White, J., dissenting) (noting that duly enacted laws providing for a legislative veto were found unconstitutional despite having "been placed in nearly 200 statutes…in every field of governmental concern" over a period of "five decades").

Nor would granting Plaintiffs injunctive relief "upset the entire federal campaign finance framework only months prior to the next federal election." Opp. Br. at 36, citing *Rufer v. FEC*, 2014 U.S. Dist. LEXIS 114762 at *23 (Aug. 19, 2014). This is overstated. Congress anticipated and intended that candidates competing in primary and general elections would be able to receive $5,200 in contributions. Indeed, under current law, this $5,200 may be contributed to a candidate all at once—provided that the donor gives the day *before* the primary election has passed. Permitting Plaintiffs to contribute that same amount now does not pose an existential threat to the current campaign finance system.

*Rufer*, on the other hand, involves a claim that *no* contribution limits may be applied to political party committees, such as the Republican National Committee (RNC) and Democratic National Committee (DNC), for the purpose of funding non-coordinated expenditures. Plaintiffs make no representations as to the constitutionality of the political party limitations, but it is plain that the relief requested in *Rufer*—unlimited contributions to party committees—is several degrees greater than the remedy suggested here.

The FEC's remaining argument—that "enjoining the FEC from performing its statutory duty constitutes a substantial injury to the FEC" which infringes the public interest—presupposes the constitutionality of the Commission's statutory duties. Opp. Br. at 36 (citation and quotation marks omitted). But where the statute likely conflicts with the Constitution, the statute must yield. There is no public interest—none—in the enforcement of an unconstitutional law. *Gordon v. Holder*, 721 F. 3d 638, 653 (D.C. Cir. 2013).

## Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

Respectfully submitted this 15th day of September, 2014.

/s/ Allen Dickerson
Allen Dickerson (DC Bar No. 1003781)
Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Telephone: 703-894-6800
Facsimile: 703-894-6811
adickerson@campaignfreedom.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of September, 2014, I caused a copy of the foregoing Plaintiff's Reply Memorandum on Motion for Preliminary Injunction to be filed electronically using the CM/ECF system, causing notice to be sent to the parties listed below:


Erin R. Chlopak                         echlopak@fec.gov

Steve Nicholas Hajjar                   shajjar@fec.gov

Benjamin A. Streeter, III               bstreeter@fec.gov

Kevin Deeley                            kdeeley@fec.gov


                                        s/ Allen Dickerson
                                          Allen Dickerson