UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| LAURA HOLMES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 14-1243 (RMC) |
| FEDERAL ELECTION COMMISSION, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION DENYING PRELIMINARY INJUNCTION**

The Federal Election Campaign Act limits donor contributions to $2,600 per candidate, per election (primary, run-off (if any), and general elections). Plaintiffs want to combine their primary and general election contributions so as to increase their contributions to $5,200 for the candidate in the general election, without "wasting" money on the primary. Plaintiffs do not seek to make unlimited financial contributions. Instead, they allege that the FECA per-election limit on their contributions violates their constitutional rights under the First and Fifth Amendments; they seek a preliminary injunction to prevent enforcement of the law by the Federal Election Commission. Plaintiffs challenge the analysis and conclusion of the Supreme Court in *Buckley v. Valeo* and its progeny. This Court does not have that luxury. Plaintiffs thus fail to demonstrate likelihood of success on the merits or irreparable harm and the public interest in the integrity of the election process outweighs their private interest in giving money in a more focused way. Accordingly, their motion for a preliminary injunction will be denied.

# I.  FACTS

**A.  Background**

Defendant Federal Election Commission (FEC) is a federal government agency charged with administering, interpreting, and enforcing the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431-57.[1]  Under FECA and its subsequent amendments, donors may contribute $2,600 per election to individual federal candidates, per election.  *See* 2 U.S.C. § 441a(a); FEC, *Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold*, 78 Fed. Reg. 8530, 8532 (Feb. 6, 2013) (limit on contributions made to federal candidates during the 2013-2014 election cycle is $2,600 per candidate, per election).  An "election" is defined as "a general, special, primary, or runoff election."  2 U.S.C. § 431(1)(A).  The total amount that one may contribute to a particular candidate during a full election cycle depends on the number of elections in which that candidate runs.  For example, if the candidate runs in both a primary and a general election, an individual may contribute a total of $5,200—$2,600 for the primary and $2,600 for the general election.  If the candidate must also participate in a runoff election, an individual may contribute an additional $2,600 for that election, for a total of $7,800.

FEC has implemented various regulations on how contributions are to be allocated among these elections.  Contributors "are encouraged to designate their contributions in writing for particular elections."  11 C.F.R. § 110.1(b)(2)(i).  If a contribution is not designated, it is presumed to be for "the next election for that Federal office after the contribution is made."  *Id.* § 110.1(b)(2)(ii).  If a contribution is designated for an election that has already occurred, it

---

[1] Effective September 1, 2014, the provisions of FECA codified at 2 U.S.C. §§ 431-57 were recodified and transferred to 52 U.S.C. §§ 30101-30146.  Plaintiffs cite to Title 2 in their briefs and thus the Court will also do so herein for purposes of clarity.

can only be used to satisfy outstanding net debts from that election; to the extent a contribution exceeds net debts, it must be refunded, redesignated to another election, or reattributed as from another contributor. *Id.* at § 110.1(b)(3)(i).  If a candidate fails to qualify for the general election, contributions for that election must also be refunded, redesignated, or reattributed. *Id.* "Redesignation" means that a candidate running in a general election "may spend unused primary contributions for general election expenses;" however, those contributions "continue to apply toward the contributors' limits for the primary" and do not prevent the same contributor from giving more money for the general election. FEC Campaign Guide, *Congressional Candidates and Committees June 2014*, at 21, available at http://www.fec.gov/pdf/candgui.pdf (citing 11 C.F.R. § 110.3(c)(3)) (last visited Oct. 20, 2014).  As a result, if a party candidate has no opposition in the primary election, one may contribute $2,600 to the primary and $2,600 to the general election and the candidate can use both amounts ($5,200) in the general election alone.

Plaintiffs Laura Holmes and Paul Jost are a married couple, residing in Miami, Florida.  Compl. ¶ 8.  Ms. Holmes supports Carl DeMaio, a general election candidate for California's 52nd Congressional District.  *Id.* ¶ 19.  Mr. DeMaio finished second in the primary election behind incumbent Scott Peters, who was the only member of the Democratic Party on the ballot to represent CA-52.[2]  *Id.* ¶ 20.  Ms. Holmes did not make any contributions to Mr. DeMaio before the primary, but contributed $2,600 after the primary.  *Id.* ¶ 21.  Mr. Jost supports Marionette Miller-Meeks, a general election candidate for Iowa's Second Congressional District.  *Id.* ¶ 22.  He contributed $2,600 to Dr. Miller-Meeks after she won her primary, but made no

---

[2] Under California's "Top Two" primary system, all candidates for United States congressional offices are listed on the same primary ballot and the two candidates that receive the most votes, regardless of party preference, proceed to compete in the general election.

contributions before the primary.  *Id.* ¶ 24.  During the general election Dr. Miller-Meeks will face incumbent David Loebsack, who was the only candidate on the ballot in the Democratic Party primary.  *Id*. ¶ 23.  Both Plaintiffs wish to contribute an additional $2,600 to their preferred candidates but cannot because of the limits on contributions for a general election.

### B.  Plaintiffs' Complaint and Motion for Declaratory Relief

Plaintiffs allege that FECA's contribution limit of $2,600 per election is unconstitutional as applied, where Plaintiffs want to contribute an additional $2,600 to general election candidates who (1) won contested primaries and (2) face opponents in the general election who did not have significant opposition in their primaries.  Plaintiffs first argue that the per-election contribution rule impermissibly burdens their First Amendment right to associate by creating an artificial distinction between primary and general elections without furthering any anticorruption interest.  Because they cannot contribute the entire $5,200 after the primary, Plaintiffs assert, they are foreclosed from fully supporting the successful party candidate. Plaintiffs further argue a violation of equal protection, contending that they are treated differently than contributors to candidates who ran in uncontested primaries.  Specifically, they assert that while contributors to candidates facing no significant primary opposition can effectively give $5,200 for the general election (because those candidates can use the $2,600 contributed before the primary towards the general election, as well as the $2,600 contributed after the primary), In contrast, Plaintiffs, who wish only to support candidates in the general election, are limited to a single contribution of $2,600.  On these grounds, Plaintiffs have moved for a preliminary injunction to enjoin enforcement of the rule.[3]

---

[3] As correctly noted by FEC, the Court's jurisdiction over the Complaint is based on 2 U.S.C. § 437h, which provides that the district court shall certify all questions of FECA's constitutionality to the Court of Appeals for *en banc* review.  According to the D.C. Circuit, it remains an open question whether "section 437h deprives the district court of authority to grant

4

## II.  LEGAL STANDARD

### A.  Preliminary Injunction

A district court may grant a preliminary injunction "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  A plaintiff seeking a preliminary injunction must establish that:

>   (a) he is likely to succeed on the merits;
>   (b) he is likely to suffer irreparable harm in the absence of preliminary relief;
>   (c) the balance of equities tips in his favor; and
>   (d) an injunction is in the public interest.

*Winter v. NRDC, Inc.*, 555 U.S. 7, 7 (2008).  The D.C. Circuit has further instructed that "the movant has the burden to show that all four factors . . . weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).[4]  Further, a preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004); *see also Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) ("A

---

[preliminary injunctive] relief based on a constitutional challenge to FECA." *Wagner v. FEC*, 717 F.3d 1007, 1017 n.9 (D.C. Cir. 2013).  The Court does not address this issue given its denial of Plaintiffs' motion for a preliminary injunction.  *See Rufer v. FEC*, No. 14-0837, 2014 U.S. Dist. LEXIS 114762, at *20, *23 (D.D.C. Aug. 19, 2014) (denying injunctive relief where plaintiffs raised constitutional questions that had to be certified to the Circuit under FECA).

[4] Traditionally, courts balanced the four factors on a "sliding scale," *i.e.*, a lesser showing on one factor could be surmounted by a greater showing on another factor.  *See CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005).  However, more recently the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required. *See Davis*, 571 F.3d at 1292; *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.") (internal quotations omitted).  Still, the Court undertakes a balancing approach below given that "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *Converdyn v. Moniz*, No. 14-1012, 2014 U.S. Dist. LEXIS 127838, at *24 n.2 (D.D.C. Sept. 12, 2014).

preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (internal citations omitted).

### III. LEGAL ANALYSIS

#### A. Likelihood of Success on the Merits

##### 1. First Amendment

The Supreme Court has long held that "[t]he right to participate in democracy through political contributions is protected by the First Amendment, but that right is not absolute." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1441 (2014).  Although both are protected as First Amendment speech, the Court distinguishes between *expenditures by candidates*, which are essentially unlimited, and *limits on contributions* to a particular candidate.  *See, e.g., id*. at 1444; *Buckley v. Valeo*, 424 U.S. 1, 19-21 (1976).  Expenditures are a core form of political expression and any restriction is subject to "exacting scrutiny;" a candidate's expenditures may only be restricted "if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest." *McCutcheon*, 134 S. Ct. at 1444 (citing *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)).

By contrast, "a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley*, 424 U.S. at 20-21.  Thus, in evaluating contribution restrictions, "[e]ven a significant interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *Id.* at 25 (internal citations omitted).  Limits on contributions will be upheld as "sufficiently important" if they are appropriately designed to reduce *quid pro quo* corruption or the

appearance of corruption.  *See id.* at 26-27; *McCutcheon*, 134 S. Ct. at 1450 ("This Court has identified only one legitimate governmental interest for restricting campaign finances: preventing corruption or the appearance of corruption.").  If a court "is satisfied that some limit on contributions is necessary," then it "has no scalpel to probe" the specific level at which the limit is set.  *Buckley*, 424 U.S. at 30; *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (Breyer, J., plurality) ("We cannot determine with any degree of exactitude the precise restriction necessary to carry out the statute's legitimate objectives. In practice, the legislature is better equipped to make such empirical judgments, as legislators have particular expertise in matters related to the costs and nature of running for office.  Thus ordinarily we have deferred to the legislature's determination of such matters.") (internal quotations omitted).  The First Amendment does not compare a contributor's rights with the rights of other contributors, but rather focuses on whether the burden imposed by the contribution limit is closely drawn to match a sufficiently important state interest.  *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 387-88 (2000).

    Plaintiffs are not likely to succeed on the merits of their First Amendment claim because FEC's contribution limit of $2,600 per election per candidate only marginally restricts Plaintiffs' freedom of association and is properly designed to reduce corruption or the appearance of corruption.  To start, Plaintiffs have *not* been prevented from supporting their preferred candidates with the full $5,200 contribution authorized by law.  They could have contributed $2,600 to any candidate before the primaries, but *chose* not to do so because of their belief that the money would be "wasted in an intraparty squabble" as opposed to being used to fight the incumbent in the general election. Pl. Mem. at 1.  That Plaintiffs elected not to exercise their right of free expression before the primary election does not render the law unconstitutional as applied.

Plaintiffs contend that their rights were infringed because they should not have to associate with a candidate during the primary election campaign; rather, they argue, they should be able to contribute only to the primary winner for the general election because "[b]y drawing the line at $5,200, Congress implicitly found that contributions of that size, at least, pose no cognizable risk of corruption." *Id.* at 14 (citing *McCutcheon*. 134 S. Ct. at 1452).  However, contrary to Plaintiffs' suggestion, neither Congress nor *McCutcheon* approved contributions of $5,200 for a single election.  The base limit of $5,200 imposed by Congress and upheld by the Court is the total allowable contribution limit for both primary and general elections, *i.e.*, $2,600 each. *McCutcheon*, 134 S. Ct. at 1442, 1451.  The per-election limit was designed to restrict financial contributions while allowing expression of First Amendment associational rights in every election in which a candidate runs.  This is a quintessential political decision made by politicians who understand the process far better than the courts and is deserving of deference. *See Buckley*, 424 U.S. at 29-30.[5]

Plaintiffs also maintain that FEC has not set forth a valid anti-corruption rationale for the rule limiting contributions on a per-election basis.  However, the Supreme Court has long ago concluded that restrictions on the amount of money one can contribute per election prevent corruption and the appearance of corruption by allowing candidates to compete fairly in each stage of the political process. *See Buckley*, 424 U.S. at 26-27 (upholding contribution limits because "the integrity of our system of representative democracy is undermined" when "large

---

[5] Plaintiffs claim that such deference is inapplicable here because they are challenging the structure of the contribution limit scheme, not the limit itself.  Pl. Reply at 4.  However, Plaintiffs' attempt to reframe the issue falls short.  The limit is not $5,200, as Plaintiffs would have it.  The limit is $2,600 *per election* which might, if a run-off occurs, result in an authorized contribution of $7,800.  Plaintiffs wish to contribute $5,200 to the general election alone, as opposed to the $2,600 deemed appropriate by Congress.  Thus, despite their claims to the contrary, Plaintiffs are indeed objecting to the specific base limit on how much an individual may contribute per election.

contributions are given to secure political *quid pro quo*'s from current and potential office holders" and because of the dangerous impact "of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions"). Moreover, given that "the danger of corruption and the appearance of corruption apply with equal force to challengers and to incumbents," there is "ample justification for imposing the same fundraising constraints upon both." *Id.* at 33.

Furthermore, primaries are a necessary part of the election process. Voters have a First Amendment right to associate with and financially support primary candidates. And, of course, voters are also free to engage in independent political expression by volunteering their services. Intimately aware of the financial demands of a modern election campaign, Congress has nonetheless maintained a per-person, per-election contribution limitation. Plaintiffs are not wrong that a candidate who participates in an uncontested primary may go into a general election with more money than a candidate who ran in a contested primary. But there is certainly no rule requiring that all candidates have equal funding. To the contrary, inequity in campaign finances is an inherent part of elections. *See Davis v. FEC*, 554 U.S. 724, 742 (2008) ("Different candidates have different strengths. Some are wealthy; others have wealthy supporters who are willing to make large contributions. . . . [T]here is no legal right to have the same resources to influence the electoral process.") (citations omitted). FECA simply makes uniform the amount a person can contribute to a candidate on a per-election basis. This restriction, therefore, is closely drawn to match a sufficiently important state interest and does not overly burden Plaintiffs' freedom to associate. *See Buckley*, 424 U.S. at 21 ("The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing.").

### 2. Fifth Amendment Equal Protection

Plaintiffs also contend that the bifurcated contribution limit violates their right to equal protection under the law. The Fourteenth Amendment specifies that that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, § 1. Equal protection applies equally to the federal government through the Fifth Amendment Due Process Clause. U.S. Const. Amend. 5("No person . . . shall be deprived of life, liberty or property, without due process of law."). *See, e.g., Buckley*, 424 U.S. at 93 ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."); *News Am. Publ'g, Inc. v. FCC*, 844 F.2d 800, 804 (D.C. Cir. 1988) ("Although the Equal Protection Clause appears only in the 14th Amendment, which applies only to the states, the Supreme Court has found its essential mandate inherent in the Due Process Clause of the Fifth Amendment and therefore applicable to the federal government.").

The Supreme Court has held that the First Amendment requires "closely drawn" scrutiny for limits on political contributions, *Davis v. FEC*, 554 U.S. at 737, but has not addressed the scrutiny applicable to a challenge to restrictions on political contributions under an equal protection rubric. Recent courts to have considered the issue have applied the same "closely drawn" scrutiny to equal protection challenges. *See Riddle v. Hickenlooper*, 742 F.3d 922, 928 (10th Cir. Colo. 2014) ("For the sake of argument, we can assume that this form of intermediate scrutiny applies when contributors challenge contribution limits based on the Fourteenth Amendment's Equal Protection Clause rather than the First Amendment."); *Woodhouse v. Me. Comm'n on Governmental Ethics & Election Practices*, No. 14-266, 2014 U.S. Dist. LEXIS 117926, at *18 (D. Me. Aug. 22, 2014) ("Neither the Supreme Court nor the First Circuit has announced any different standard for dealing with First Amendment

discrimination challenges, and I therefore apply it in this equal protection context."); *Wagner v. FEC*, 901 F. Supp. 2d 101, 112-13 (D.D.C. 2012), *vacated on other grounds*, 717 F.3d 1007 (D.C. Cir. 2013). Since both the First and Fifth Amendments are crucial protectors of individual rights, this Court agrees and will apply intermediate scrutiny to determine whether FECA's per-election contribution limit is closely drawn to match a sufficiently important state interest or differentiates unfairly between similarly situated contributors.[6]

As discussed above, the Court finds that the contribution limit, which applies equally to every contributor, advances the legitimate state interest of preventing corruption or the appearance of corruption.[7] Furthermore, the means are closely drawn and do not unfairly differentiate among contributors. Indeed, Plaintiffs have not been treated differently than any other contributor because the statute here "applies the same limitations on contributions to all candidates regardless of their present occupations, ideological views, or party affiliations." *Buckley*, 424 U.S. at 31. Plaintiffs consistently describe the law as asymmetrical, citing cases in which the Supreme Court struck down state laws imposing varying contribution limits on different groups of contributors. Pl. Mem. at 20-22 (citing *Davis*, 554 U.S. 724; *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806 (2011)). These cases are inapposite. While Plaintiffs may be prevented from contributing $5,200 to their chosen candidates after their primary elections, Plaintiffs were only restricted *to the exact same extent* as any other individuals wishing to contribute more than $2,600 per election.

---

[6] Plaintiffs argue for an intermediate level of scrutiny, not strict scrutiny, when analyzing their Fifth Amendment claims. FEC argues for application of rational basis scrutiny, but also asserts that Plaintffs' equal protection claim would similarly fail under intermediate scrutiny.

[7] Plaintiffs do not argue that *Citizens United v. FEC*, 558 U.S. 310 (2010), has impacted the analysis in this case.

Plaintiffs argue that FECA differentiates unfairly because contributors cannot give $5,200 for the general election to a candidate who faced significant opposition in the primary, but can effectively give $5,200 for the general election to a candidate who faced no such opposition. However, Plaintiffs misapprehend the statutory contribution limits. No individual has the power to give $5,200 solely for use in the general election. It may be that a contributor to an unopposed incumbent will contribute $2,600 before the primary election in anticipation that it will all be used in the general election. How the funds are actually spent, of course, is wholly out of the contributor's control. An unopposed candidate may well decide to campaign before the primary in order to get a head start on the general election campaign—or not, depending on the candidate's calculus of her reelection chances. In either case, contributors have not been treated differently. Plaintiffs' argument that the law works asymmetric and discriminatory effects by favoring one category of candidates over another is therefore misplaced. It is the candidate who faces no primary challenger—whether an incumbent or a first-time candidate—who might be advantaged by saving campaign costs for the primary. Accordingly, even if a candidate in a primary must spend money to advertise and win, it does not follow that the rights of his contributors have been treated unequally.[8]

Plaintiffs rely heavily on *Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), a case involving a Colorado statute that allowed individuals to contribute $400 to Republican and Democratic candidates at any time, but limited contributions to write-in candidates to $200. In theory, the contribution limit was higher for Party candidates because they had to compete in primaries, while write-in candidates did not. *Id.* at 926. However, the state law did not require

---

[8] It may be that Plaintiffs object to FEC regulations allowing "[t]ransfers of funds between the primary campaign and general election campaign of a candidate of funds unused for the primary," 11 C.F.R. § 110.3(c)(3), but Plaintiffs have not brought that challenge here.

contributions to be made before a primary; contributors could give $400 to Party candidates before *or* after a primary election, but contributors to write-in candidates were limited to one $200 contribution. The Tenth Circuit found the statute unconstitutional as applied because it violated the equal protection rights of contributors to write-in candidates. Specifically, the law "treated contributors differently based on the political affiliation of the candidate being supported" and thereby "impinged on the right to political expression for those who support[ed]" write-in candidates. *Id.* at 927. Furthermore, the reviewing court found no link between the differing contribution limits and the state's anticorruption interest, nor did state officials rely on the cost of a primary as a separate governmental interest. *Id*. at 928.

In contrast to the Colorado statute, FECA does not "create[ ] different contribution limits for individuals running against one another." *Id.* at 929 (citing *Davis*, 554 U.S. at 738). To the contrary, it creates *identical* contribution limits for all candidates based solely the number of elections in which they run for federal office. The fact that a candidate may be fortunate enough not to face "significant opposition" in her primary does not render the statute's treatment of her contributors unconstitutional. These are not different limits "on candidates vying for the same seat," *Davis v. FEC*, 554 U.S. at 743-44, but *uniform* limits on contributors. Any variance in the levels of funding is a natural result of the political process, not a result of the per-election contribution limit.

The Court finds that Plaintiffs' perceived inequality in contribution limits is not imposed by FECA or its regulations, but by the vagaries of the election process. Plaintiffs' Fifth Amendment claim of an equal protection violation is without merit.

**B. Remaining Preliminary Injunction Factors**

None of the other factors affecting the grant of a preliminary injunction weighs in favor of Plaintiffs' motion. First, Plaintiffs are not likely to suffer irreparable harm; rather, "they will simply be required to adhere to the regulatory regime that has governed campaign finance for decades." *Rufer*, 2014 U.S. Dist. LEXIS 114762, at *7-8 (finding that "alleged harm to Plaintiffs caused by delaying receipt of unlimited contributions does not overcome the weighty considerations against preliminary relief"). Second, the balance of equities does not support a preliminary injunction. The regulatory scheme for contributions under the FECA has been in place for decades and approved by the Supreme Court. Plaintiffs' attempt to locate a problem of constitutional proportions in the per-election contribution limit would upset settled expectations immediately before the vote itself. *See Veasey v. Perry*, No. 14-41127, 2014 WL 5313516, at *4 (5th Cir. Tex. Oct. 14, 2014) ("The Supreme Court has instructed that we should carefully guard against judicially altering the status quo on the eve of an election."), *cert. denied*, Nos. 14A393, 14A402 and 14A404, 2014 WL 5311490 (Oct. 18, 2014); *see also Rufer*, 2014 U.S. Dist. LEXIS 114762, at *23. ("Granting preliminary relief would upset the entire federal campaign finance framework [immediately] prior to the next federal election based on an as yet untested legal theory. Permitting that to happen would be imprudent, to say the least, and certainly not in the public interest.").

Moreover, "'[t]he presumption of constitutionality which attaches to every Act of Congress is . . . an equity to be considered in favor of [the government] in balancing hardships.'" *Stop This Insanity v. FEC*, 902 F. Supp. 2d 23, 50 (D.D.C. 2012) (quoting *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987)) (alterations in original). This Circuit has "set a high standard for irreparable injury," and Plaintiffs have not met their burden of showing a clear entitlement to the

"extraordinary remedy" of a preliminary injunction.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs are not likely to succeed on the merits of their two constitutional claims; they have shown no irreparable harm; the equities do not favor Plaintiffs; and a preliminary injunction is not in the public interest.  Their motion for a preliminary injunction will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date: October 20, 2014

                                                                          /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge