UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
**LAURA HOLMES,** *et al.***,**                               )
)
                        **Plaintiffs,**                        )
)
            **v.**                                             )            **Civil Action No. 14-1243 (RMC)**
)
**FEDERAL ELECTION COMMISSION,** )
)
                        **Defendant.**                        )
_____)

**Response to Order to Show Cause**

Plaintiffs Laura Holmes and Paul Jost hereby respond to this Court's October 20, 2014

Order directing them to show cause "why the Court should not convert [its] Order denying

Plaintiffs' Motion for a Preliminary Injunction into a final appealable Order denying Plaintiffs'

request to certify the constitutional issues to the United States Court of Appeals for the District

of Columbia Circuit for *en banc* consideration." Order on Mot. Prelim. Inj. (ECF No. 16).

Notwithstanding its denial of Plaintiffs' motion, this Court's mandate is to certify

constitutional questions to the *en banc* Court of Appeals under the procedure prescribed by 2

U.S.C. § 437h (transferred to 52 U.S.C. § 30110).[1] *See* Compl., ¶ 5 (ECF No. 1); Civil Cover

Sheet, VI (invoking § 437h). Because the standard for certification is substantially lower than

that for denial of a preliminary injunction, district courts will at times deny preliminary relief,

only to then certify constitutional questions to the Court of Appeals. *See, e.g., SpeechNow.org v.*

*FEC*, 567 F.Supp. 2d 70 (D.D.C. 2008) (denying plaintiffs' motion to enjoin enforcement of

---

[1] Effective September 1, 2014, the provisions codified at 2 U.S.C. §§ 431-57 were transferred to
52 U.S.C. §§ 30101-30146. This case was filed before September 1, 2014, thus, Plaintiffs'
citations have been to Title 2. For clarity, this Court also cited to Title 2 in its Memorandum
Opinion. Plaintiffs continue that convention here.

certain contribution limits); 2009 U.S. Dist. LEXIS 89011 (D.D.C. Sept. 28, 2009) (certifying constitutional questions to the *en banc* D.C. Circuit).

Under § 437h, this Court lacks jurisdiction to decide the merits of this dispute. Instead, "the plain text of section 437h grants *exclusive* merits jurisdiction to the *en banc* court of appeals." *Wagner v. FEC*, 717 F.3d 1007, 1011 (D.C. Cir. 2013) (*per curiam*) (emphasis supplied). Despite the statute's clear and commanding language, "[i]n a § 437h case, the district court need not certify legal issues that have been resolved by the Supreme Court." *Khachaturian v. FEC*, 980 F.2d 330, 331 (5th Cir. 1992) (*en banc*). That is, under § 437h, the district court certifies questions that are "neither frivolous nor so insubstantial as to warrant dismissal for failure to state a claim." *Int'l Ass'n of Machinists and Aerospace Workers v. FEC*, 678 F.2d 1092, 1096 (D.C. Cir. 1982) (*en banc*).

This Court has not concluded that Plaintiffs' constitutional questions are resolved by Supreme Court precedent, nor that they are "frivolous" or "so insubstantial as to warrant dismissal for failure to state a claim." [2] It has instead concluded that Plaintiffs did not satisfy the rigorous test necessary to obtain the extraordinary remedy of a preliminary injunction. Converting the denial of Plaintiffs' motion for preliminary relief into a denial of their certification request will deny Plaintiffs their constitutional and statutory rights to litigate the merits of their claims. Neither denial of preliminary relief nor denial of certification is an adjudication of the as-applied challenge Plaintiffs are mounting to FECA. Section 437h reserves that task to the Court of Appeals sitting *en banc*. Thus, Plaintiffs renew their request that this Court certify the constitutional questions raised here pursuant to § 437h.

---

[2] In *Cal. Med. Ass'n v. FEC*, Justice Marshall described the cases that merit certification under § 437h as those that are "neither insubstantial nor settled," 453 U.S. 182, 192 n.14 (1981). This suggests that, in the § 437h context, "frivolous" and "insubstantial" have the same meaning.

**ARGUMENT**

I. **Plaintiffs renew their request that this Court certify constitutional questions to the *en banc* D.C. Circuit pursuant to 2 U.S.C. § 437h.**

 A.  **Plaintiffs challenge FECA and its amendments.**

In filing this case, Plaintiffs invoked jurisdiction under 2 U.S.C. § 437h (*see, e.g.,* Compl. ¶5; Civil Cover Sheet at VI.) Under that statute,

> any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately *shall* certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting *en banc*.

(emphasis supplied). Plaintiffs have standing under § 437h because they are eligible to vote in the 2016 Presidential election. *See* Holmes Decl., ¶ 5 (ECF 6-2); Jost Decl., ¶ 5 (ECF 6-3).

In *Buckley v. Valeo*, the D.C. Circuit outlined the district courts' role in cases brought under § 437h: (1) identify the constitutional issues raised by the complaint; (2) take evidence; (3) make factual findings; and (4) certify constitutional questions to the D.C. Circuit. 519 F.2d 817, 818 (D.C. Cir. 1975). This procedure is neither novel nor extraordinary, and has been implemented as a matter of course throughout FECA's lifespan. Indeed, in the D.C. Circuit, there is no other means of adjudicating novel challenges to FECA. *Wagner*, 717 F.3d at 1011.

 B.  **The standard for certification under § 437h is substantially more permissive than the standard for entry of a preliminary injunction.**

As the FEC has noted, "[a] preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief….[It is] never awarded as of right. A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest.'" Op. at 9 (ECF No. 12) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 24, 20 (2008)). Given the exceptional nature of this remedy, "[t]he 'movant has the burden to show that all four factors…weigh in favor of the injunction.'" Mem. Op. at 5 (ECF No. 15) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir 2009).

By contrast, § 437h provides for review of certification requests under a much more permissive standard. Certification is required, with a limited exception for questions that are frivolous or matters of settled law. *See, e.g., Cal. Med. Ass'n* v. *FEC*, 453 U.S. at 192 n. 14. Thus, at this stage of this litigation, this Court need only make a threshold determination that Plaintiffs' questions are neither frivolous nor already settled. *See, e.g., Khachaturian* v. *FEC*, 980 F.2d at 331 ("the district court also must develop a record and make findings of fact sufficient to allow the *en banc* court to decide the constitutional issues") (citation omitted); *Int'l Ass'n of Machinists and Aerospace Workers* v. *FEC*, 678 F.2d at 1096.

Consequently, the rigorous standard for preliminary relief at issue at the injunctive relief stage is distinct from this statutory path to *en banc* review. Certification is a matter of right established by Congress, not "an extraordinary remedy that may only be awarded upon a clear showing." *Winter*, 555 U.S. at 22. It is not a multi-factor test, nor one that imposes a weighty burden on parties who seek it. By contrast, it is a presumption in favor of certification: "[o]nce a core provision of FECA has been reviewed and approved by the courts, unanticipated variations also may deserve the full attention of the appellate court." *Goland v. United States*, 903 F.2d 1247, 1257 (9th Cir. 1990). Moreover, "[a] preliminary injunction is just that—preliminary. It does not substitute for a trial, and its usual office is to hold the parties in place until a trial can take place; the proceedings are streamlined, intentionally, because the fuse is often so short." *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) (citations omitted)).

Even if this Court does not conclude that Plaintiffs articulate a certifiable question, if the *facts* of their case present such a question, certification should still occur. Indeed, "[t]his Court has the power, and apparently the duty, to identify the constitutional issues and to reframe the question as necessary so that any proper non-frivolous question is certified to the *en banc* Court of Appeals." *Libertarian Nat'l. Comm. v. FEC*, 930 F. Supp. 2d. 154, 169 (D.D.C. 2013) (granting in part and denying in part plaintiff's request to certify questions under § 437h). In *LNC v. FEC*, Judge Wilkins found that that the plaintiff's proposed certified question was so broadly written as to be foreclosed by facial rulings of the Supreme Court. Nevertheless, the Court concluded that "on th[o]se facts, it appear[ed] that the anti-corruption interests that would be implicated by [the contribution limit challenged there] may be minimal." 930 F. Supp. 2d at 171. Thus, "[a]fter a careful review of the parties' positions, the facts, and the current state of the law in this area, this Court conclude[ed] that although the question presented by the LNC for certification does not merit review by the *en banc* Court of Appeals, there is a valid, narrower constitutional question raised by the [facts of the case] that presents an as-applied challenge that should be certified." *Id.* The Court reiterated that it "does not relish requiring our Court of Appeals to sit *en banc*, but at the same time it has a duty under 2 U.S.C. § 437h to certify appropriate constitutional issues." *Id.*

C.      **This case is neither frivolous, nor does it raise settled questions.**

1.      **As-applied challenges to federal contribution limits are appropriate.**

The Supreme Court's holding in *Doe v. Reed* reiterates the importance of the as-applied path to constitutional litigation, particularly in the election law context. 561 U.S. 186 (2010). The Court "note[ed]—as we have in other election law disclosure cases—that upholding the law against a broad-based challenge does not foreclose a litigant's success in a narrower one." *Id.* at

201 (citation omitted). *See also, e.g., Wisc. Right to Life v. FEC*, 546 U.S. 410, 411-12 (2006) (in

upholding a BCRA provision against a facial attack, the Court "did not purport to resolve future

as-applied challenges.") Here, the fact that the individual contribution limits have been upheld in

previous cases does not mean that the limits' bifurcation is constitutional as applied to Plaintiffs.

Nor does it mean that the bifurcation itself has been upheld in previous cases.

>    **2.    When federal law allows some contributors to give $5,200 to a candidate for use in the general election, but denies other contributors that same ability, it violates the First Amendment in a manner that has not been addressed by the Supreme Court.**

Facially, FECA's contribution limits only "marginally restrict[] Plaintiffs' freedom of

association," Mem. Op. at 7; *Buckley v. Valeo*, 424 U.S. 1, 20-21 (1976) (*per curiam*). Plaintiffs

do not dispute that "[e]ven a significant interference with protected rights of political association

may be sustained if the State demonstrates a sufficiently important interest and employs means

closely drawn to avoid unnecessary abridgement of associational freedoms." Mem. Op. at 6

(quoting *Buckley*, 424 U.S. at 25). But the bifurcated limit is not closely drawn to avoid

unnecessary abridgment of associational freedoms in Plaintiffs' case. That is because "if a party

candidate has no opposition in the primary election, one may contribute $2,600 to the primary

and $2,600 to the general election and the candidate can use both amounts ($5,200) in the

general election alone." Mem. Op. at 3. The Plaintiffs, however, cannot contribute $5,200 for

their preferred candidates to use in the general election alone. This result alone demonstrates a

lack of tailoring.

As this Court noted, "there is certainly no rule requiring that all candidates have equal

funding. To the contrary, inequity in campaign finances is an inherent part of elections." Mem.

Op. at 9 (citing *Davis v. FEC*, 554 U.S. 724, 742 (2008)). But here that inequity results from the

operation of a federal statute. This Court stated that because "FECA simply makes uniform the

amount a person can contribute to a candidate on a per-election basis", "[t]his restriction is closely drawn to match a sufficiently important state interest and does not overly burden Plaintiffs' freedom to associate." Mem. Op. at 9. But, as applied here, the bifurcated limit does the *opposite*: it allows supporters of candidates without primary challengers to give twice as much money for the general election. This is not simply an exercise in legislative discretion with respect to setting dollar amounts, which courts lack a "scalpel to probe." *Buckley*, 424 U.S. at 30; *Randall v. Sorrell*, 548 U.S. 230, 247, 248 (2006). It *doubles* the scope of association that certain contributors enjoy, wholly by virtue of government design.

The Supreme Court has not considered this result: "neither Congress nor *McCutcheon* approved contributions of $5,200 in a single election" Mem. Op. at 8. Yet, precisely those contributions are taking place here—although only for one side of a two-candidate contest. As this Court notes, "the Supreme Court has long ago concluded that restrictions on the amount of money one can contribute per election prevent corruption and the appearance of corruption by allowing candidates to compete fairly in each stage of the political process." Mem Op. at 8 (citing *Buckley*, 424 U.S. at 26-27). If anything, this demonstrates that *Buckley* did not contemplate a situation like the Plaintiffs'—where it is FECA itself that is creating an *unfair* advantage for certain candidates. Thus, Plaintiffs' as-applied First Amendment challenge does not raise a settled question.

> **3.    When federal law allows some contributors to give $5200 to a candidate for use in the general election, but denies other contributors that same ability, it denies those disfavored contributors equal protection of the laws, and does so in a way that has not been addressed by the Supreme Court.**

First, the Supreme Court "has not addressed the scrutiny applicable to a challenge to restrictions on political contributions under an equal protection rubric." Mem. Op. at 10. This in

and of itself suggests that Plaintiffs' equal protection challenge is not a matter of settled law. More pointedly, Plaintiffs' equal protection argument, like their First Amendment argument, was not anticipated by the *Buckley* Court. In fact, the Court's assessment that FECA "applies the same limitations on contributions to all candidates regardless of their present occupations, ideological views, or party affiliations" illustrates that it has *not* considered the factual scenario here, where party affiliations in part determine with how much contributors may (or may not) give. *Buckley*, 424 U.S. at 31. Tellingly, the 11 C.F.R. § 110.3(c)(3) provision allowing for transfer of funds from primary to general election campaigns under was not even added to the Federal Register until 1989, more than a decade after the *Buckley* decision was handed down.

Thus, like its First Amendment challenge, Plaintiffs' as-applied due process challenge does not raise a settled question.

**D.      There is ample support for certification of Plaintiffs' questions.**

The recent *SpeechNow.org v. FEC* case—which, like this one, challenged the as-applied enforcement of certain contribution limits—is instructive. In *SpeechNow,* this Court was asked to impose a preliminary injunction, but "found that the contribution limits on independent expenditure groups [the subject of that challenge] supported a substantial state interest, and that the plaintiffs were unlikely to succeed on the merits." 2009 U.S. Dist. LEXIS 89011 at *2. Initially, the *SpeechNow* district court noted that "[b]ecause the denial of a preliminary injunction is appealable as of right…plaintiffs' certification motion will also be denied. Plaintiffs should take up their request directly with the Court of Appeals." 567 F. Supp. 2d at 82. But after the plaintiffs submitted a motion to reconsider, emphasizing the mandatory and jurisdictional nature of § 437h, the Court certified the questions presented. In so doing, Judge Robertson noted: "[t]he task before me is not to answer any constitutional questions, or to render a judgment of

any kind. Instead, I am to make findings of fact that will allow the Court of Appeals to answer the constitutional questions I certify." 2009 U.S. Dist. LEXIS 89011 at *2. *SpeechNow* is instructive here. Although this Court denied Plaintiffs' request for a preliminary injunction, the Supreme Court has not addressed the questions Plaintiffs present.

This Court's own doubts about its merits jurisdiction highlight the importance of the § 437h process. The Memorandum Opinion noted that Plaintiffs moved for a preliminary injunction, but "the Court's jurisdiction over the Complaint is based on 2 U.S.C. § 437h, which provides that the district court should certify all questions of FECA's constitutionality to the Court of Appeals for *en banc* review. According to the D.C. Circuit, it remains an open question whether 'section 437h deprives the district court of authority to grant [preliminary injunctive] relief based on a constitutional challenge to FECA.'" Mem. Op. at 4-5, n. 3 (quoting *Wagner*, 717 F.3d at 1017 n.9 (D.C. Cir. 2013). This Court continued that it "does not address this issue given its denial of Plaintiffs' motion for a preliminary injunction." *Id.* (citation omitted). But that is precisely Plaintiffs' point. If this Court lacks merits jurisdiction, certification is all the more important. It is the only avenue for review of the constitutional questions presented. What's more, it is the specific procedure Congress provided to streamline review of questions it recognized as exceptionally important.

**CONCLUSION**

Plaintiffs' case raises nonfrivolous issues of first impression. Thus, this Court should not convert its October 20th Order to one denying their motion to certify questions under 2 U.S.C. § 437h. Instead, it should to certify the constitutional questions presented here.

Dated this 3rd day of November, 2014.

Respectfully Submitted,

s/Allen Dickerson
Allen Dickerson, DC Bar No. 1003781
Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Phone: 703.894.6800
Facsimile: 703.894.6811
adickerson@campaignfreedom.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of November, 2014, I filed the foregoing Plaintiffs'

Response to Order to Show Cause in the above-captioned action via this Court's ECF system,

causing notice to be served upon the following:

Kevin Deeley
Federal Election Commission
999 E Street, NW
Washington, DC 20463
kdeeley@fec.gov

*Counsel for Defendant*

> /s/ Allen Dickerson
> Allen Dickerson, DC Bar No. 1003781
> Center for Competitive Politics
> 124 S. West Street, Suite 201
> Alexandria, VA 22314
> Phone: 703.894.6800
> Facsimile: 703.894.6811
> adickerson@campaignfreedom.org
>
> *Counsel for Plaintiffs*